2007 UT 17

**BRIGHAM YOUNG UNIVERSITY, Plaintiff and Appellee,**

v.

**TREMCO CONSULTANTS, INC., aka Tremco Legal Solutions, Inc., SoftSolutions, Inc., and John Does 1–10, Defendants and Appellants.**

**Kenneth W. Duncan, Lee A. Duncan, KWD Associates, L.C., and Julee Associates, L.C., Movants to Intervene and Appellants.**

No. 20040744.

Supreme Court of Utah.

Feb. 2, 2007.

Rehearing Denied March 28, 2007.

Steven W. Call, Michael D. Mayfield, Herschel J. Saperstein, Benjamin J. Kotter, Salt Lake City, for plaintiff.

Eric K. Schnibbe, Salt Lake City, for defendant Tremco.

Neil R. Sabin, Salt Lake City, for defendant SoftSolutions.

Clark R. Nielsen, Salt Lake City, for movants.

NEHRING, Justice:

¶ 1 In this appeal, we review and reject Brigham Young University's latest attempt to satisfy a money judgment from persons and entities other than its judgment debtor, SoftSolutions, Inc. (SoftSolutions). In *Brigham Young University v. Tremco Consultants, Inc.*, 2005 UT 19, 110 P.3d 678, we held that Brigham Young University (BYU) could not summarily extend liability to Tremco Consultants, Inc. (Tremco) for its SoftSolutions judgment. Today, we reject BYU's attempt to collect the SoftSolutions judgment from the officers and directors of SoftSolu-

tions and related entities that we will collectively refer to as "Duncan et al." We hold that BYU could not pursue Duncan et al. for SoftSolutions' debt using only post-judgment collection procedures because those procedures did not afford those individuals a constitutionally permissible degree of due process of law.

¶ 2 The factual background, issues, analysis, and result of this appeal were foreshadowed in *Tremco,* 2005 UT 19, 110 P.3d 678. To those who may desire a more panoramic view of the history of this conflict, we commend to them our prior opinion for factual and analytical detail that complements the summary of facts to which we now turn.

¶ 3 In the early 1980s, BYU developed a software product which used an algorithm called "D–Search." The strength of the software was its indexing and information retrieval capabilities, which could be used to improve database applications. Between 1987 and 1990, BYU entered into a series of licensing agreements with SoftSolutions that allowed SoftSolutions to use BYU's D–Search software technology in exchange for royalty payments.

¶ 4 In 1992, SoftSolutions transferred the licensed technology to its wholly owned subsidiary, SoftSolutions Technology Corporation (STC). Thereafter, SoftSolutions was dissolved by the state of Utah for failing to file an annual report. Two years later, WordPerfect acquired the STC stock. The shareholders of STC were three limited liability companies, KWD Associates, AST Associates, and Julee Associates, which collectively received approximately $13.5 million from WordPerfect in exchange for the STC stock.

¶ 5 Prior to its purchase of the STC stock, WordPerfect knew of and wished to be insulated from a simmering royalty dispute between SoftSolutions and BYU over the D–Search software. However, before the stock sale took place, Tremco signed an indemnification agreement with STC. Under its terms, Tremco agreed to pay for any obligations that STC might incur from the SoftSolutions–BYU royalty dispute.

¶ 6 In 1995, after SoftSolutions had dissolved and WordPerfect had purchased the STC stock, an arbitrator awarded BYU $1,672,467 in its royalty dispute with SoftSolutions. The parties charged with wrapping up the affairs of SoftSolutions challenged the arbitrator's decision. The district court confirmed the arbitration award; and on appeal, we affirmed the damages portion of the district court's ruling. *Softsolutions, Inc. v. Brigham Young Univ.,* 2000 UT 46, 1 P.3d 1095.

¶ 7 With its SoftSolutions judgment in hand, BYU turned its attention to collecting it. BYU pursued the collection procedures available to judgment creditors under the Utah Rules of Civil Procedure. BYU discovered that SoftSolutions had no assets. Therefore, BYU sued Tremco to establish Tremco's liability under the indemnification agreement. At BYU's behest, the district court consolidated BYU's collection action against SoftSolutions with the Tremco litigation.

¶ 8 The consolidation of these actions created an unusual hybrid court creature: part collection action and part traditional civil action against Tremco. SoftSolutions had seen its day in court to defend against the merits of BYU's claims come and go. It appeared in the district court solely as a judgment debtor.[1] SoftSolutions appeared in this status disarmed with most of the due process protections it had possessed before BYU acquired the judgment against it.

¶ 9 By contrast, Tremco was fully armed with due process rights, which it tried to use without success to turn away BYU's claims. The district court granted BYU's motion for summary judgment against Tremco, resulting in the entry of an order dated June 13, 2002. The order included the court's determination that Tremco was liable to pay the 1998 SoftSolutions judgment. In reaching this result, the district court embraced each of BYU's four theories: (1) that Tremco, STC, and SoftSolutions had carried on a

---

1. We have held that post-judgment collections proceedings are separate and independent from the action that yielded the judgment that the collection action seeks to satisfy. *See Cheves v. Williams,* 1999 UT 86, ¶ 52, 993 P.2d 191.

common, joint business as an association under Utah Rule of Civil Procedure 17(d); (2) that Tremco was liable to BYU for the judgment against SoftSolutions because Tremco had entered into an indemnity agreement with STC and BYU was a third-party beneficiary of that agreement; (3) that Tremco aided a fraudulent transfer of SoftSolutions assets to STC; and (4) that Tremco was in privity with SoftSolutions and was therefore liable for the SoftSolutions judgment under the doctrine of res judicata.

¶ 10 Contemporaneously with its quest for summary judgment against Tremco in the civil action, BYU sought an order in supplemental proceedings in its collection action pursuant to the version of rule 69 of the Utah Rules of Civil Procedure then in effect.[2] Rule 69 governed the collection procedures, principally the procedures for executing on property of a judgment debtor, available to a judgment creditor.

¶ 11 BYU claimed that using its legal theories as the rationale and rule 69 as the vehicle, it was entitled to execute against the property of Duncan et al. to satisfy the SoftSolutions judgment. BYU brought back the rule 17(d) business association theory that it deployed against Tremco and coupled it with new theories. First, it utilized Utah Code Ann. § 16–10a–1408 (prohibiting distribution of assets to shareholders of a dissolved corporation until corporate debts are paid); second, it relied on two of our cases: *Murphy v. Crosland*, 915 P.2d 491 (Utah 1996), and *Steenblik v. Lichfield*, 906 P.2d 872 (Utah 1995), for the proposition that corporate officers are personally liable for the obligations of dissolved or suspended corporations. It then sought to advance its theory with the aid of rule 69(s), which authorized execution against the property of a judgment debtor that was in the possession of someone else.

¶ 12 The district court was persuaded that BYU's theories had merit and entered a supplemental order dated July 10, 2002, (July 2002 supplemental order), extending liability

for the SoftSolutions judgment to Duncan et al. as "associates of the unincorporated association." The district court also found Duncan et al. to have received proceeds from the sale of the STC stock. It adopted BYU's view that SoftSolutions continued to "own" the software throughout its odyssey through STC, the WordPerfect purchase of that stock, and the distribution of the sale proceeds among Duncan et al.

¶ 13 After the district court entered the July 2002 supplemental order, SoftSolutions and Duncan et al. each filed post-judgment motions seeking to vacate, alter, and/or amend the supplemental order. Duncan et al., which found themselves facing an execution on their assets, despite having never been joined as parties, also moved to intervene. In July 2003, the district court held a hearing on these motions. The district court orally denied each motion, noting that the collection procedures pursued by BYU did not offend Duncan et al.'s rights to due process of law. The district court did not reduce its oral ruling to a written order until August 2004, well after the appeal was underway that resulted in our *Tremco* decision in May 2005.

¶ 14 Testing the reach of the July 2002 supplemental order, BYU obtained writs of execution on two parcels of real property situated in Wasatch County, Utah. One of these parcels was held in the name of Rannoch, L.L.C., while Carie, L.L.C. held the second property. BYU asserted that these properties were traceable to Duncan et al. because they were purchased by KWD—a former shareholder of STC and beneficiary of the stock sale to WordPerfect that was controlled by Duncan et al.—with WordPerfect proceeds and then were transferred to Rannoch and Carie respectively without consideration.

¶ 15 In *Tremco*, we held that none of BYU's four theories could lawfully extend liability for the SoftSolutions judgment to Tremco. Consequently, we reversed the dis-

---

**2.** In 2002, Utah Rule of Civil Procedure 69(s) allowed property "in the possession of the judgment debtor or any other person" to be applied toward the satisfaction of a judgment debt. Today, Utah Rule of Civil Procedure 69 has been repealed and replaced with a reformulated requirement governing both pre- and post-judgment seizures of property under Utah Rule of Civil Procedure 64.

trict court's grant of summary judgment against Tremco and vacated the June 13, 2002 order. We declined, however, to reach the challenges to the district court's imposition of liability on Duncan et al. because they were not named parties in any action before the district court, and we therefore did not acquire jurisdiction to take up their appeal. *Tremco*, 2005 UT 19, ¶¶ 45–49, 110 P.3d 678. Moreover, we determined that we lacked jurisdiction to consider whether the district court erred when it denied Duncan et al.'s motion to intervene because that ruling had yet to be memorialized in a written order.

¶ 16 In the aftermath of *Tremco*, BYU continued to assert its right to execute on the assets of Duncan et al., including the Wasatch County properties because the July 2002 supplemental order continued in force with respect to those persons and entities. Duncan et al. have now properly invoked our jurisdiction under Utah Code section 78-2-2(3)(j) by appealing the district court's August 2004 orders to deny their motions to intervene; to stay supplemental proceedings; and to vacate, alter, and/or amend the July 2002 supplemental order and all rulings prior thereto.

## ANALYSIS

### I. THE DENIAL OF DUNCAN ET AL.'S MOTION TO INTERVENE

¶ 17 In *Brigham Young University v. Tremco Consultants, Inc.*, 2005 UT 19, 110 P.3d 678, we declined to take up the claims of Duncan et al. because they were not parties to the litigation from which the appeal was taken. At the time of the *Tremco* appeal, Duncan et al. had unsuccessfully attempted to intervene in the Tremco lawsuit, but the district court had not yet entered an order memorializing that ruling. We observed that a written order denying a motion to intervene would be final and appealable. We also indicated that the issues presented by an appeal from a denied attempt to intervene are distinct from those inherent in a challenge to the propriety of the district court's July 2002 supplemental order.[3]

¶ 18 The order denying Duncan et al.'s motion to intervene is now before us. The merits of the district court's decision to deny intervention to Duncan et al. are of not any particular consequence to this appeal. Rather, the order provided Duncan et al. the means to invoke this court's jurisdiction. Thus, although we took pains in *Tremco* to note that an appeal from the denial of Duncan et al.'s motion to intervene "will present issues distinct from those regarding the validity of the supplemental order itself," *Tremco*, 2005 UT 19, ¶ 46 n. 7, 110 P.3d 678, the question of whether the district court erred when it denied Duncan et al. leave to intervene merges with our review of Duncan et al.'s challenge based on the denial of due process of law.

¶ 19 Despite its subordinate role in our ruling, we hold that the district court exceeded its discretion when it rejected Duncan et al.'s motion to intervene. The district court misapplied the intervention standards set out in Utah Rule of Civil Procedure 24 because the inability of Duncan et al. to participate as a party contributed materially to the unconstitutional deprivation of Duncan et al.'s right to due process of law. As we will discuss shortly, the deprivation of Duncan et al.'s property occurred in the July 2002 supplemental order, and any later participation could not rectify a lack of earlier involvement.

¶ 20 While we stand by the proposition that issues related to the application of rule 24 are distinct from those raised by the July 2002 supplemental order (and the ruling denying Duncan et al.'s motion to vacate, alter, and/or amend that order), the due process deprivations visited upon Duncan et al. by

---

3. The denial of a motion to intervene is an appealable order. *See Tracy v. Univ. of Utah Hosp.*, 619 P.2d 340, 341–42 (Utah 1980).

   Accordingly, when the district court reduces to writing its oral ruling denying the motion to intervene filed by the Duncan individuals and entities, that order will be subject to appeal.

   That appeal, however, will present issues distinct from those regarding the validity of the supplemental order itself, which the Duncan individuals and entities have attempted to raise here.

   *Tremco*, 2005 UT 19, ¶ 46 & n. 7, 110 P.3d 678.

the supplemental order infected the district court's ruling on intervention. We therefore find little to be gained by remanding this matter to the district court with instructions to allow Duncan et al. to intervene in a proceeding that we have, in the course of reaching our holding on intervention, determined to be an unconstitutional violation of due process.

## II. THE JULY 2002 SUPPLEMENTAL ORDER IS VACATED

¶ 21 Duncan et al. also appeal from the district court's denial of their motion brought under Utah Rule of Civil Procedure 59 to vacate, alter, and/or amend the July 2002 supplemental order. Our analysis of this argument, like our assessment of the district court's denial of Duncan et al.'s motion to intervene, inevitably leads us into an inquiry into the due process implications of the district court's treatment of the rule 59 motion.

¶ 22 By the time Duncan et al. were extended the opportunity to participate in a hearing on their motion to vacate, alter, and/or amend the July 2002 supplemental order, BYU had already persuaded the district court that it could collect its SoftSolutions judgment from others, including Duncan et al. When Duncan et al. were invited to the starting line, the race was all but over. In its May 2002 order in the Tremco lawsuit, the district court had ruled that SoftSolutions, STC, and Tremco had conducted business as an unincorporated association and, therefore, BYU could cast its collection net beyond named parties to the lawsuit pursuant to rule 17(d). It ruled that STC acquired the D–Search license from SoftSolutions through a fraudulent transfer and based on this finding authorized BYU to execute on the proceeds of the STC stock sale to Word-Perfect. Finally, it had already entered its July 2002 supplemental order, which built on the district court's prior rulings and extended them to Duncan et al.

¶ 23 Every motion to vacate, alter, and/or amend a judgment brought under rule 59 asks a court to undo its work, an invitation that no judge greets with enthusiasm. One commentator has aptly described a party bringing a rule 59 motion as a supplicant who has "hat-in-hand and heart-in-throat when he or she argues a post-trial motion." H. James Clegg, *Post–Trial Motions*, 8 Utah B.J. 48, 48 (November 1995). This apprehension is well-founded. As our court of appeals has observed, "[o]nce the judge has decided, the system assumes he or she has decided correctly and would decide the same way again." *Salt Lake City Corp. v. James Constructors, Inc.*, 761 P.2d 42, 44 n. 5 (Utah Ct.App.1988).

¶ 24 We are therefore unpersuaded that the July 2003 hearing on the rule 59 motion restored to Duncan et al. any meaningful measure of the due process that they had been denied by being foreclosed from participating in the events that led to the entry of the July 2002 supplemental order. This supplemental order is, therefore, the order to which we will direct our attention in evaluating the due process claims of Duncan et al.

## III. DUNCAN ET AL. WERE DENIED DUE PROCESS OF LAW PRIOR TO THE JULY 2002 SUPPLEMENTAL ORDER

¶ 25 BYU urges us to turn away the challenge to the district court's denial of the rule 59 motion because Duncan et al. have failed to marshal evidence or otherwise demonstrate that the factual findings set out in the district court's ruling denying the rule 59 motion or the July 2002 supplemental order were clearly erroneous. This emphasis is misplaced. Our assessment of whether Duncan et al. were denied due process in these proceedings has little to do with the factual findings made by the district court or the merits of BYU's legal theories. Instead, our focus is directed to what process was due Duncan et al. before liability could attach to them under each of BYU's theories. The district court's factual findings are at most incidental to this task. In this instance, the issue of whether Duncan et al. were afforded adequate due process is a question of law which we will explore without extending deference to the district court. "[I]ssues, including ... due process, are questions of law which we review for correctness." *D.A. v. State (State ex rel. S.A.)*, 2001 UT App 307, ¶ 8, 37 P.3d 1166 (internal quotation marks omitted); *see also State v. Holland*, 921 P.2d

430, 433 (Utah 1996) ("[T]he ultimate question of whether the trial court strictly complied with constitutional and procedural requirements . . . is a question of law that is reviewed for correctness.").

¶ 26 Moreover, the July 2002 supplemental order was granted summarily. The district court found that

[n]o opposition to the motion was made by anyone on behalf of SoftSolutions, Inc. and therefore the dispositive facts set forth in BYU's memoranda in support of the motion are deemed admitted pursuant to Rule 4–501(2)(B) of the Utah Rules of Judicial Administration and/or pursuant to Rule 56 of the Utah Rules of Civil Procedure.

To the extent that our nondeferential due process analysis requires us to review the facts, we will do so guided by our standards for reviewing appeals from summary judgment and indulge inferences emanating from the facts in a manner favorable to Duncan et al. *Spor v. Crested Butte Silver Mining, Inc.*, 740 P.2d 1304 (Utah 1987).

¶ 27 In *Tremco*, 2005 UT 19, 110 P.3d 678, we expressed "serious concerns" over whether the July 2002 supplemental order that authorized BYU to execute against the property of Duncan et al. satisfied the requirements of due process of law. Owing to jurisdictional impediments, we did not explore the grounds for our concern in that appeal. With jurisdiction no longer an issue, we now examine those concerns and find them to have been well-founded. Duncan et al. were denied their requisite measure of due process of law when the district court extended liability to them for the SoftSolutions judgment under the provisions of the July 2002 supplemental order.

■■■ ¶ 28 No principle is more fundamental to the integrity of a society that claims allegiance to the rule of law than the principle that a person may not be deprived of his property without first being afforded due process of law. This guarantee is enshrined in both the United States Constitution and the Constitution of Utah. U.S. Const. amend. XIV, § 1; Utah Const. art. I, § 7. That due process of law is owed in every instance is a self-evident proposition. Measuring the amount of process that is due

in any particular setting is more difficult. Nevertheless, "[w]e long ago succinctly summarized the fundamental features of due process, observing that it requires that notice be given to the person whose rights are to be affected. It hears before it condemns, proceeds upon inquiry, and renders judgment only after trial." *Pangea Techs., Inc. v. Internet Promotions, Inc.*, 2004 UT 40, ¶ 8, 94 P.3d 257 (internal quotation marks omitted). The bare essentials of due process thus mandate adequate notice to those with an interest in the matter and an opportunity for them to be heard in a meaningful manner. *See Chen v. Stewart*, 2004 UT 82, ¶ 68, 100 P.3d 1177.

¶ 29 The Utah Rules of Civil Procedure owe their existence to the constitutional guarantee of due process of law. They "[are] designed to provide a pattern of regularity of procedure which the parties and the courts [can] follow and rely upon." *Gillett v. Price*, 2006 UT 24, ¶ 13, 135 P.3d 861 (brackets in original) (internal quotation marks omitted). Our rules of civil procedure lend operational expression to the abstract constitutional promise of due process. To those who pursue civil actions in conformity with the rules of civil procedure, we extend the right to invoke the coercive power of the state to seize property or to command a party to conform its conduct to the court's decrees.

¶ 30 The same process is not, however, due everyone who comes before the court. A judgment debtor appears in court having consumed his ration of due process and with his property exposed in summary proceedings. Accordingly, our due process analysis must begin by determining what process was due Duncan et al. The due process issue presented to us and our analysis of it rest on a framework of two procedural facts. First, Duncan et al. were not named parties in any of the iterations of this case, not the original action BYU brought against SoftSolutions, not the lawsuit BYU brought against Tremco, and not in the litigation's final consolidated formulation. Second, nowhere in the vastness of the record of these cases does BYU state a cause of action against any of the Duncan individuals or entities. Rather BYU presumes that Duncan et al. merely

stand in the shoes of the true judgment debtor—SoftSolutions. Nevertheless, Duncan et al. face the coerced deprivation of property which they claim to be theirs, not SoftSolutions, without ever having a civil action brought against them.

¶ 31 In most instances, the guarantee of due process prohibits the enforcement of a money judgment against a person who has not been designated a party or served with process. *Richards v. Jefferson County*, 517 U.S. 793, 798, 116 S.Ct. 1761, 135 L.Ed.2d 76 (1996). Absent due process, a court wields no power over an individual because a court only acquires jurisdiction over a party through proper service of process, which provides notice to the defendant that he is being sued and that he must appear and defend himself. *Meyers v. Interwest Corp.*, 632 P.2d 879, 880 (Utah 1981). Although Duncan et al. have clearly been aware of litigation swirling about them for some time, they have never been called upon to defend their interests in the manner afforded a defendant in a civil action.

¶ 32 BYU counters by insisting that Duncan et al. are not entitled to be "true" defendants. They have little or no personal interest in the outcome of this case, BYU claims, and thus are owed a correspondingly small amount of due process. BYU essentially argues that Duncan et al. have been mere caretakers of SoftSolutions' property and as such are entitled to process no greater than BYU's judgment debtor, SoftSolutions.

¶ 33 BYU specifically argues that Duncan et al. were part of an unincorporated association with SoftSolutions and therefore the court may disregard the corporate forms of the various entities controlled by Duncan et al. This would mean that, for debt collection purposes, Duncan et. al are the functional equivalent of SoftSolutions and are therefore liable for the SoftSolutions judgment debt. According to BYU, Duncan et al. are not newcomers to the court, entitled to the full spectrum of due process, but mere stand-ins for SoftSolutions-an entity which has already received due process. Alternatively, BYU argues that several legal theories lead to the conclusion that Duncan et al. are merely possessors, and not owners, of SoftSolutions' property. Thus they have no legal interest in the outcome of this action and are not entitled to any amount of due process.

¶ 34 Under the two presuppositions, BYU posits Duncan et al. sustained no shortfall of due process for two reasons: (1) the district judge remedied any due process shortcomings when he provided SoftSolutions and Duncan et al. a hearing on their motions to vacate, alter, and/or amend the July 2002 supplemental order and (2) Duncan et al. were not entitled to due process because BYU was simply pursuing property of SoftSolutions that could be traced to Duncan et al.

¶ 35 We have already rejected BYU's first justification on the grounds that the hearing on Duncan et al.'s rule 59 motion took place in an environment in which critical considerations—like burden of proof—were distorted to the advantage of BYU. Duncan et al. were entitled at a minimum to a forum in which BYU was obliged to carry its burden of proof on the merits of its theories, which supposedly extended liability to Duncan et al. Duncan et al. were never presented this opportunity.

¶ 36 We will take up BYU's second justification in the context of the legal theories advanced by BYU to extend liability for the SoftSolutions judgment to Duncan et al. Of particular relevance to our inquiry is whether BYU's legal theories could be pursued through the judgment debt collection procedures set out in 69(s) of our Rules of Civil Procedure, which appears to permit a judgment creditor to reach the assets of persons not named as parties to the lawsuit that yielded the judgment.

¶ 37 Property in the possession of an unnamed party to a lawsuit may fall prey to a judgment creditor under two general principles. The first focuses on the relationship between the judgment debtor and the nonparty target of the collection action. Where the identities of debtor and the third party merge in the eyes of the law, liability for the judgment may extend to the third party. Alter ego and allied rationales for disregarding the corporate form are the most prominent examples of legal doctrines of this type.

The second principle directs its attention to the character of the target property. An action which alleges that a judgment debtor has fraudulently transferred property to a third party is an example of a circumstance in which the destination of property rather than the identity of parties results in an extension of liability beyond the named judgment debtor. However, we are aware of no cause of action derived from either principle that can be enforced against an unnamed party in a post-judgment collection action.

¶ 38 Alter ego is a common law doctrine deeply rooted in our corporate law jurisprudence. *See, e.g., Smith v. Grand Canyon Expeditions Co.,* 2003 UT 57, 84 P.3d 1154; *Amoss v. Bennion,* 420 P.2d 47, 49 (Utah 1966); *In re Madsen's Estate,* 123 Utah 327, 259 P.2d 595 (1953). Our legislature has codified the law governing fraudulent transfers, providing detailed and comprehensive guidance regarding both substantive elements of fraudulent transfers and procedural prerequisites, such as a statute of limitations specific to fraudulent transfers.

¶ 39 In light of the status conferred through the development of the common law and legislative action upon alter ego and fraudulent transfer, it is apparent that a claim founded on either theory is a civil action that must be prosecuted in the manner prescribed in the Utah Rules of Civil Procedure, commencing with the filing of a summons and complaint and not the abbreviated post-judgment collection procedures of rule 69. *McBride–Williams v. Huard,* 2004 UT 21, 94 P.3d 175 (stating that a civil action is commenced under rule 3 of the Utah Rules of Civil Procedure by filing a complaint with the court or by serving a summons on the defendant with a copy of the complaint).

¶ 40 Such a cause of action must then be prosecuted in a civil action commenced by the filing of a complaint and including the right of a defendant to receive service of process, conduct discovery, enjoy the protections afforded by a trial—including a jury trial and the allocation of the burden of proof—and the right to appeal. Duncan et al. never received these protections.

¶ 41 While the failure of a party in a civil action to comply with one or more of the rules of civil procedure will not necessarily result in a constitutional deprivation of due process, a violation of due process does occur if a court permits a cause of action that should properly be prosecuted as a civil action to proceed under those rules promulgated to assist in the collection efforts of a judgment creditor.

¶ 42 As we have noted, the full measure of process is not due everyone. Once a judgment has been entered against a party, he is exposed to a deprivation of his property with few opportunities to object or seek judicial intervention on his behalf. An opportunity for due process mischief arises when a judgment creditor attempts to utilize collection procedures to acquire property that is not in the control of the judgment debtor or in which a non-party claims an interest. These circumstances almost inevitably invite a conflict between the rights of the judgment creditor, who believes that he is entitled to have his judgment satisfied with dispatch, and the target of the execution, who likely believes otherwise. This conflict is on display here.

■ ¶ 43 Although BYU never asserted a claim of alter ego against Duncan et al., it persuaded the district court that it should disregard the corporate form of SoftSolutions. The district court extend individual liability to Duncan et al. under the provisions of rule 17(d) of the Utah Rules of Civil Procedure, which renders associates in an unincorporated business association liable for a judgment entered against the association. In *Tremco,* we held that rule 17(d) is not substantive in nature and does not create a cause of action which could result in the imposition of personal liability. Based on this interpretation of rule 17(d), we reversed the district court extension of liability to Tremco on rule 17(d) grounds. *Tremco,* 2005 UT 19, ¶ 18, 110 P.3d 678. We reaffirm that interpretation today and reverse the district court's use of rule 17(d) to justify imposing liability for the SoftSolutions judgment on Duncan et al. in the July 2002 supplemental order.

¶ 44 The district court also attempted to rely on rule 69(s) to justify its determination

that BYU was entitled to recover its SoftSolutions judgment from Duncan et al. This provision, since repealed, permitted the court to "order any property of a judgment debtor, not exempt from execution, in the possession of the debtor or other person, or due to the judgment debtor, to be applied towards the satisfaction of the judgment." Utah R. Civ. P. 69(s) (2002).

¶ 45 The premise that underlay this grant of authority to execute against property in the possession of someone other than the judgment debtor is that the targeted property was, in fact, property belonging to the judgment debtor. Rule 69(h)(1) recognized the possibility that the party who held the property subject to execution might object to the execution and extended to him the right to challenge the validity of the writ of execution. This provision was not intended, however, to provide an alternative form of summary adjudication of claims that would otherwise be required to be prosecuted as civil actions. Thus, to the extent that the district court grounded its extension of liability to Duncan et al. in the July 2002 supplemental order on a theory of fraudulent transfer or alter ego, those rulings are in error because each constitutes a cause of action cognizable at law or equity subject to the full array of due process associated with a civil action.

■ ¶ 46 BYU's final theory for extending liability to Duncan et al. is one based upon Utah Code section 16–10a–1408 and is likewise not amenable to adjudication in a summary collection proceeding. Section 16–10a–1408 provides that "[a] claim [against a dissolved corporation] may be enforced ... against the shareholders of the dissolved corporation, if the assets have been distributed in liquidation." Utah Code Ann. § 16–10a–1408 (2005). This provision codifies the equitable theory known as the "trust fund" doctrine. 19 Am.Jur.2d *Corporations* § 2419 (1986). Under this theory, the "assets of a dissolved corporation become a trust fund against which the corporation's creditors have a claim." *Id.*

¶ 47 Contrary to BYU's preferred interpretation, section 16–10a–1408 does not authorize the enforcement of claims in a summary collection proceeding. In fact, the use of supplemental collection procedures is expressly rejected in section 16–10a–1407(4)(b). This provision directs the enforcement of a claim against a shareholder of a dissolved corporation to be pursued in "any civil action." As discussed above, a civil action means a proceeding subject to the full spectrum of due process safeguards. We do not believe that the legislature intended, or that our constitution would permit, an enforcement proceeding against a non-party shareholder to take place in the setting of a post-judgment collection effort.

## CONCLUSION

¶ 48 Having concluded that Duncan et al. were denied due process of law, we vacate the July 2002 supplemental order. Although we also hold that the district court erred when it denied Duncan et al.'s motion to intervene and to vacate, alter, and/or amend the July 2002 supplemental order, by vacating the supplemental order, we have extinguished any proceeding which may merit remand and the need for intervention by Duncan et al.

¶ 49 Chief Justice DURHAM, Justice PARRISH, Judge McHUGH, and Judge ATHERTON concur in Justice NEHRING's opinion.

¶ 50 Having disqualified themselves, Associate Chief Justice WILKINS and Justice DURRANT do not participate herein; Court of Appeals Judge CAROLYN B. MCHUGH and District Judge JUDITH S.H. ATHERTON sat.