before we deem ourselves foreclosed from an open reconsideration of this important question.

2011 UT 58

**SALT LAKE LEGAL DEFENDER ASSOCIATION, Petitioner,**

**v.**

**Judith ATHERTON, Judge, Respondent.**

No. 20100066.

Supreme Court of Utah.

Sept. 27, 2011.

Joan C. Watt, Patrick L. Anderson, Salt Lake City, for petitioner.

Brent M. Johnson, Salt Lake City, for respondent.

Randall W. Richards, Ogden, for real party in interest Cody Augustine.

Donald H. Hansen, Jeffrey H. Thorpe, Salt Lake City, for real party in interest Salt Lake County.

Associate Chief Justice DURRANT, opinion of the Court:

## INTRODUCTION

¶ 1 This case comes to us on a petition for extraordinary relief filed by the Salt Lake Legal Defender Association (LDA) against Judge Judith Atherton of the Third District Court. In 2009, Judge Atherton presided over a criminal proceeding involving Cody Augustine, an indigent defendant. Although Mr. Augustine was represented by private counsel, he filed a motion requesting that Judge Atherton order LDA or Salt Lake County (the County) to provide him with funding for an expert witness. Judge Atherton held a hearing on Mr. Augustine's motion, but LDA was not given notice of the hearing and was not present at it. At the hearing's conclusion, Judge Atherton ordered LDA to provide funding for Mr. Augustine's expert.

¶ 2 In its petition for extraordinary relief, LDA argues that Judge Atherton's order should be vacated. Specifically, LDA asserts that the failure to give it notice of the hearing or an opportunity to be heard violated its right to due process. We agree. At a minimum, the right to due process requires that those with an interest in a proceeding be given notice and an opportunity to be heard in a meaningful manner before their interests are adjudicated by a court. Accordingly, because LDA was given neither notice of the hearing on Mr. Augustine's motion nor an opportunity to be heard concerning his request for funding, we hold that LDA's right to due process was violated. We therefore vacate Judge Atherton's order and remand this case for further proceedings consistent with this opinion.

1. *See State v. Augustine,* 2009 UT App 218U, 2009 WL 2396108 (per curiam).

2. UTAH CODE ANN. § 77–32–302(1) (2008). Because there have been no substantive changes to

## BACKGROUND

¶ 3 In July 2008, the state charged Mr. Augustine with attempted murder, a first degree felony. At Mr. Augustine's initial court appearance on these charges, Judge Atherton concluded that he was indigent and appointed LDA to represent him. Several weeks later, Mr. Augustine hired private counsel, and LDA withdrew from representation.

¶ 4 Sometime later, Mr. Augustine filed a motion in which he requested that the district court provide him with funding to hire an expert witness. Because Mr. Augustine was able to retain private counsel, Judge Atherton concluded that he was no longer indigent. On that basis, Judge Atherton denied the motion for funding. The Utah Court of Appeals reversed this decision and remanded the case back to the district court.[1]

¶ 5 After the case was remanded, Mr. Augustine filed another motion in which he requested funding for an expert witness to assist in his defense. A copy of this motion was served on both the County and LDA. In his memorandum in support of this motion, Mr. Augustine argued that the Utah Indigent Defense Act (the Act) entitled him to receive government funding for an expert witness. In relevant part, the Act provides that each indigent defendant who is charged with a crime for which incarceration is the likely penalty shall be provided with "access to defense resources necessary for an effective defense."[2] Based on his belief that he was entitled to receive government funding for an expert witness, Mr. Augustine stated in his memorandum that the only issue the district court needed to resolve was who was required to provide the funding he requested—the County or LDA.

¶ 6 On October 16, 2009, Judge Atherton held a hearing on Mr. Augustine's motion. LDA was not given notice of the hearing and therefore did not attend. During the

the relevant statutes since Mr. Augustine filed his motion, we cite to the current version of the Act unless otherwise indicated.

hearing, Judge Atherton heard arguments by Mr. Augustine's counsel and an attorney representing the County. Several weeks after the hearing, Judge Atherton issued an order requiring LDA to provide funding for Mr. Augustine to hire an expert witness.[3]

¶ 7 Although Judge Atherton's order was not served on LDA, LDA eventually learned of it through other means. Sometime thereafter, LDA filed a petition for extraordinary relief. In its petition, LDA contends that Judge Atherton abused her discretion by ordering LDA to pay for Mr. Augustine's expert without giving it notice of the hearing or any meaningful opportunity to be heard.[4]

¶ 8 In opposition, Judge Atherton argues that she did not violate LDA's right to due process for two reasons. First, she contends that she was not required to give LDA notice because the Act does not explicitly require that notice be given to an entity before it is ordered to provide indigent defendants with defense resources. Second, because she had been previously "told that the County ha[d] a contract with LDA," she argues that she was statutorily required to order LDA to pay for the defense resource Mr. Augustine had requested, and that this requirement excused her from giving LDA either notice or an opportunity to be heard. We have jurisdiction pursuant to section 78A–3–102(2) of the Utah Code.

## STANDARD OF REVIEW

¶ 9 Petitions for extraordinary relief are governed by rule 65B of the Utah Rules of Civil Procedure. That rule provides that a petition for extraordinary relief may be granted "[w]here no other plain, speedy and adequate remedy is available."[5] The ultimate decision as to whether to grant or deny a petition lies within the sound discretion of this court.[6] The question of whether a district court erred in its application of a constitutional protection presents a question of law, which we review for correctness.[7]

## ANALYSIS

¶ 10 The Utah Constitution, like the federal constitution, prohibits the state from depriving any person of "life, liberty or property, without due process of law."[8] We have previously explained that "[t]he bare essentials of due process ... mandate adequate notice to those with an interest in [a proceeding] and an opportunity for them to be heard in a meaningful manner."[9] We have also explained that "[i]n most instances, the guarantee of due process prohibits the enforcement of a money judgment against a person [or entity that] has not been designated a party or served with process."[10]

¶ 11 For instance, in *Brigham Young University v. Tremco Consultants, Inc.*, we held that a nonparty's right to due process was violated where a district court entered an order against the nonparty without giving it notice and an opportunity to be heard.[11] In reaching this conclusion, we noted that the nonparty had "clearly been aware of litigation swirling about [it] for some time."[12] But despite this recognition, we held that the

---

3. In order to properly determine whether a defendant is entitled to state funding for an expert witness, a court must conclude both that the defendant is indigent and that an expert witness is necessary for an effective defense. *See State v. Burns*, 2000 UT 56, ¶ 32, 4 P.3d 795.

4. LDA also argues that Judge Atherton erred in ordering it to provide funding because it is not contractually obligated to pay for defense resources when an indigent defendant is represented by private counsel. Because we hold that LDA's due process rights were violated by Judge Atherton's order regardless of the terms of LDA's contract with the County, we do not reach this issue.

5. Utah R. Civ. P. 65B(a).

6. *See Bowen v. Utah State Bar*, 2008 UT 5, 7, 177 P.3d 611.

7. *See Chen v. Stewart*, 2004 UT 82, ¶ 25, 100 P.3d 1177 ("Constitutional issues ... are questions of law that we review for correctness.").

8. Utah Const. art. I, § 7; *see also* U.S. Const amend. XIV.

9. *Brigham Young Univ. v. Tremco Consultants, Inc.*, 2007 UT 17, ¶ 28, 156 P.3d 782.

10. *Id.* ¶ 31.

11. *Id.* ¶ 48.

12. *Id.* ¶ 31.

nonparty's right to due process had been violated because it "ha[d] never been called upon to defend [its] interests in the manner afforded a defendant in a civil action." [13]

¶ 12 In the instant case, it is undisputed that LDA was aware of the litigation concerning whether it or the County was responsible for providing funding for Mr. Augustine's expert witness. But as we indicated in *Tremco Consultants,* such knowledge does not satisfy the requirement that interested persons or entities be given notice and an opportunity to be heard before their interests are adjudicated by a court.[14] Thus, despite LDA's general knowledge of Mr. Augustine's request for funding, LDA's right to due process required that LDA be given notice and an opportunity to be heard before Judge Atherton adjudicated its interests and ordered it to provide funding for Mr. Augustine's defense.

¶ 13 Judge Atherton contends that she was not required to give LDA notice of the hearing because the Act does not expressly require a court to give an entity notice or an opportunity to be heard before ordering it to pay for an indigent defendant's defense resource. We agree that the Act does not expressly require a court to provide an entity with notice before ordering it to provide funding for defense resources. But the fact that a statute includes no explicit notice requirement does not exempt a court from complying with the bare essentials of due process, which require that those with an interest in a proceeding be given notice and an opportunity to be heard in a meaningful manner.[15] Thus, despite the absence of a notice requirement in the Act, LDA's right to due process required that LDA be given notice before Judge Atherton adjudicated its interests.

¶ 14 Judge Atherton also argues that she had no choice but to order LDA to provide funding for the expert witness that Mr. Augustine had requested. In support of this position, she notes that section 302 of the Act states that

[i]f [a] county . . . responsible to provide for the legal defense of an indigent, including defense resources and counsel, has arranged by contract to provide those services . . . and the court has received notice or a copy of the contract, the court shall assign the [entity] named in the contract to defend the indigent and provide defense resources.[16]

Because she had been previously "told that the County ha[d] a contract with LDA," Judge Atherton argues that she was statutorily required to order LDA to pay for Mr. Augustine's expert witness. And she contends that this statutory requirement excused her from providing LDA with notice or an opportunity to be heard. We disagree.

¶ 15 As an initial matter, as we have explained above, the fact that a statute includes no explicit notice requirement does not exempt a court from complying with the bare essentials of the right to due process. Additionally, contrary to Judge Atherton's interpretation, section 302 does not require a court to order an entity to provide indigent defendants with funding for defense resources any time the court has notice of a contract between a local government and the entity. Instead, for a contract to trigger this statutory requirement, the court must first determine whether the contract obligates the entity to provide counsel or defense resources in the circumstances presented. In this case, the court must first determine whether the contract requires LDA to provide indigent defendants with funding for defense resources—even when the defendant is represented by private counsel. Accordingly, when the scope of an entity's duty to provide counsel or defense resources to indigent defendants is unclear, it is particularly important that the entity be given notice and an opportunity to be heard before its rights are adjudicated.

¶ 16 Here, Judge Atherton recognizes that there is "some dispute as to the nature of the contract between . . . LDA and . . . the

13. *Id.*

14. *See id.*

15. *See id.* ¶ 28.

16. Utah Code Ann. § 77–32–302(2)(b) (2008).

County." She also recognizes that LDA's contract with the County might not have contemplated LDA paying for defense resources when indigent defendants are represented by private counsel. Judge Atherton nevertheless proceeded to order LDA to provide Mr. Augustine with funding for his expert witness. By doing so without providing LDA with notice or an opportunity to be heard, Judge Atherton violated LDA's right to due process.

## CONCLUSION

¶ 17 We hold that Judge Atherton violated LDA's right to due process by ordering LDA to provide funding for Mr. Augustine's expert witness without giving it notice or an opportunity to be heard. As a result of this violation, we grant LDA's petition for extraordinary relief. We therefore vacate Judge Atherton's order and remand this case for further proceedings consistent with this opinion.

¶ 18 Chief Justice DURHAM, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice DURRANT's opinion.

Justice LEE, concurring:

¶ 19 I concur in the court's decision to vacate the district court's order in this case and agree with much of the analysis in its opinion. I write separately, however, to express my agreement with the district court's construction of the Indigent Defense Act (IDA), which in my view prescribes a result on remand that is different from that contemplated by the majority.

¶ 20 Because the Salt Lake Legal Defender Association (LDA) was the subject of the underlying motion for funding for defense resources in this case, LDA was doubtless entitled to notice and an opportunity to be heard. As the majority indicates, LDA had a due process right to be heard before it was required "to provide funding for Mr. Augustine's expert." *Supra* ¶ 1. The district court's order requiring LDA to provide funding was thus in error for reasons explained in Associate Chief Justice Durrant's opinion for the court.

¶ 21 My only quibble with the majority opinion is its treatment of Judge Atherton's grounds for denying notice to LDA. In declining to provide notice to LDA, Judge Atherton noted that the statute does not require notice to an entity that is required to provide defense resources to an indigent. And because the County has elected to provide such resources through its contract with LDA, Judge Atherton believed that any defense resource that the County was required to provide would have to be provided through LDA.

¶ 22 In dismissing the foregoing as grounds for a failure to give notice to LDA, the majority states (a) that the lack of an "explicit notice requirement does not exempt a court from complying with the bare essentials of the right to due process"; and (b) that a legal aid association's responsibility to provide defense resources under the IDA depends on whether the association's contract requires it "to provide indigent defendants with funding for defense resources— even when the defendant is represented by private counsel." *Supra* ¶ 15. I agree with the first point, but nonetheless find the absence of an explicit notice requirement telling and relevant to the disposition of this case on remand. As to the second point, I disagree with the court's construction of the statute and would give different guidance to the district court on remand.

¶ 23 First, the lack of a statutory notice requirement cannot excuse a failure to provide the notice required by due process, but it does tell us something about the scope and intent of the IDA. In my view, the statute's silence regarding notice to LDA for a request for funding of defense resources to indigents who retain private counsel confirms that such requests are not viable under the statute. For reasons explained in detail in my dissent in related cases decided today, *see State v. Parduhn*, 2011 UT 55, — P.3d. ——, 2011 WL 4447629 (Lee, J., dissenting), I read the IDA to permit the government to designate a legal aid association as the "exclusive source" of the indigent's complete defense and to mandate that such an association provide both counsel and necessary defense resources. *See* UTAH CODE ANN. § 77–

32–306(4) (2008). Because Salt Lake County designated LDA as its "exclusive source" for the defense of indigents, there is no basis in the statute for an indigent who opts out of LDA to request government-funded defense resources.

¶ 24 I find the lack of a statutory requirement of notice to LDA for defense requests for funding of expert or other resources to be telling. In circumstances where the statute contemplates the provision of resources outside the "exclusive source" designated by the county, the IDA does expressly provide for notice. In counties that do not establish a legal aid association but opt instead to provide indigent defense under contracts with attorneys and/or defense resource providers, for example, the statute expressly requires a hearing and notice "to the attorney of the responsible county or municipality" when the court "considers the assignment of a noncontracting attorney or defense resource." *Id.* § 77–32–302(2)(e). Where the county designates a legal aid association like LDA as the "exclusive source" of the defense, however, the statute is silent as to notice or a hearing on the provision of non-LDA resources. The lack of a parallel notice requirement is significant. It confirms that the legislature did not anticipate the provision of non-LDA resources in counties that established a legal aid association as the exclusive source of defense resources.

¶ 25 Thus, the lack of a statutory notice requirement for an indigent's request for non-LDA resources is significant, but for reasons somewhat different from those identified by Judge Atherton. LDA would have a due process right to notice if it were on the hook for defense resources for defendants who retain private counsel. But I think the IDA expressly forecloses any such liability by LDA or the County, and the absence of a notice requirement in the statute merely confirms that conclusion.

¶ 26 Second, for reasons set forth in my dissenting opinion in the consolidated cases decided today, *see Parduhn*, 2011 UT 55, —— P.3d ——, 2011 WL 4447629 (Lee, J., dissenting), I disagree with the court's conclusion that a legal aid association's responsibility to provide defense resources under the

IDA depends on whether the association's contract requires it "to provide indigent defendants with funding for defense resources—even when the defendant is represented by private counsel." *Supra* ¶ 15. I read the IDA to designate a legal aid association like LDA as the exclusive source of an indigent's defense and to require it to provide both legal counsel and defense resources. Thus, unlike the majority, I would not deem the terms of the LDA's contract to be determinative of the question whether such resource is to be provided by the association or by the County on remand. Instead, I interpret the IDA to put indigent defendants to a threshold choice: either accept the legal aid association as the exclusive source of the complete defense to be provided by the government, or opt out of a government-funded defense upon retaining private counsel.

¶ 27 Under that view of the statute, the motion for defense resources at issue here would be foreclosed by the terms of the IDA on remand in this case. Thus, I would vacate Judge Atherton's order because LDA was entitled to notice before it could be ordered to provide defense resources, but I would remand with instructions to deny the underlying motion on the ground that there is no statutory right to such resources where the defendant has opted out of LDA representation.