*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 25**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

GREGORY N. JONES,
*Appellant/Cross-Appellee,*

*v.*

MACKEY PRICE THOMPSON & OSTLER, MACKEY PRICE, LLC,
RANDALL A. MACKEY, and GIFFORD W. PRICE,
*Appellees/Cross-Appellants.*

No. 20170604
Heard October 4, 2019
Filed May 14, 2020

On Direct Appeal

Third District, Salt Lake County
The Honorable Richard D. McKelvie
No. 060911956

Attorneys:

James D. Gilson, Lyndon R. Bradshaw, Cole P. Crowther,
Salt Lake City, for appellant/cross-appellee

Gifford W. Price, Salt Lake City, for appellees/cross-appellants

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court,
in which CHIEF JUSTICE DURRANT, JUSTICE HIMONAS,
JUSTICE PETERSEN, and JUDGE POHLMAN joined.

Having recused himself, JUSTICE PEARCE does not participate herein;
COURT OF APPEALS JUDGE JILL M. POHLMAN sat.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 This appeal arises out of a longstanding dispute between attorney Gregory Jones and his former law firm, Mackey Price Thompson & Ostler, P.C. (MPTO), over the distribution of litigation proceeds. Jones claims a right to some of the fees collected by the firm in personal injury cases arising out of the use of the diet drug

known as Fen-Phen. Jones has asserted claims for quantum meruit/unjust enrichment, breach of fiduciary duty, and fraudulent transfer. He also claims a right to an award of punitive damages and seeks to impose a constructive trust on the funds held by MPTO.

¶2   In 2017, after nearly ten years of litigation (including a previous appeal to this court), a jury entered a $647,090 verdict against MPTO on a quantum meruit/unjust enrichment theory. But the district court dismissed Jones's claims for breach of fiduciary duty, fraudulent transfer, and punitive damages after MPTO filed a motion for directed verdict. It also rejected Jones's request for a constructive trust.

¶3   After trial, the district court concluded that the judgment properly extended to a second entity, Mackey Price, LLC—an entity that the district court deemed a successor in interest to MPTO under rule 25 of the Utah Rules of Civil Procedure. Yet the district court denied Jones's request to extend joint and several liability (under an alter ego theory) against Randall Mackey and Gifford Price individually and against a third entity—Mackey Price Law, a Utah corporation. And it declined Jones's request to conclude, in post-judgment proceedings, that Mackey, Price, and Mackey Price Law had violated Utah's LLC and corporation statutes.

¶4   On this appeal, Jones challenges the dismissal of several of his claims on directed verdict, the denial of his request for a constructive trust, and the refusal to entertain his alter ego and statutory violation claims in post-judgment proceedings. On cross-appeal, MPTO challenges the jury verdict on the quantum meruit/unjust enrichment claim on the ground that the expert witness testimony that supported it should have been excluded. Mackey Price, LLC also cross-appeals, asserting that the district court lacked jurisdiction to add it to the judgment as a successor in interest to MPTO.

¶5   We affirm the directed verdict on the fiduciary duty claim but reverse the dismissal of the fraudulent transfer and punitive damages claims and reverse and remand for further proceedings on Jones's request for imposition of a constructive trust. We also affirm the denial of Jones's alter ego and statutory claims against Mackey, Price, and Mackey Price Law because such claims cannot be asserted in post-judgment proceedings under *Brigham Young University v. Tremco Consultants, Inc.*, 2007 UT 17, 156 P.3d 782. And we uphold the jury verdict on the quantum meruit/unjust enrichment claim on the ground that the district court did not abuse its discretion in admitting the testimony of Jones's expert witness.

¶6 Finally, we clarify and limit the reach of our decision in *Tremco*. We conclude that the district court had the authority to consider a rule 25 motion for substitution—to add Mackey Price, LLC as a successor to MPTO—in post-verdict proceedings. But we nonetheless reverse and remand on the ground that Mackey Price, LLC was entitled to contest the merits of the proposed substitution once the district court rejected its jurisdictional arguments.

## I. BACKGROUND

### A. The Dispute and Jones's First Appeal

¶7 In 1992 Randall Mackey and Gifford Price formed a professional corporation to conduct their law practice. Their firm has had various names over the years but was known as Mackey Price Thompson & Ostler, P.C., during the period relevant to this case. We refer to it herein as MPTO.

¶8 Two attorneys associated with MPTO, Jeffrey Thompson and Russell Skousen, initiated a Fen-Phen program with MPTO to litigate claims arising from the fallout surrounding the beleaguered weight-loss pill. Jones also worked for MPTO and focused on Fen-Phen cases from 2002 to May 2005. At that time, Jones developed dissociative amnesia, which severely impaired his memory and prevented him from continuing his work. The Fen-Phen cases eventually generated over $1 million in fees for MPTO. After Jones claimed to be entitled to some of the Fen-Phen funds, MPTO deposited the fee checks into its trust account and agreed as a "professional courtesy" to let Jones know if any of the funds were to be distributed.

¶9 Jones sued MPTO over these funds in July 2006, asserting various claims for relief. MPTO distributed the Fen-Phen funds in December of that year, purportedly to avoid incurring large tax liabilities. MPTO paid $328,261 to Thompson and Skousen, $165,000 to Jones, $175,484 each to Mackey and Price, and the rest to other MPTO creditors. Yet Jones maintained that he was entitled to a larger share of the funds. In February 2007, he successfully amended his complaint to add claims for breach of fiduciary duty and fraudulent transfer.

¶10 Jones's suit against MPTO, Mackey, Price, Thompson, Skousen, and various Thompson and Skousen limited liability companies reached us in 2015. At that time, we affirmed the district court's dismissal of Jones's contract claim, as well as his quantum meruit and fraudulent transfer claims against Mackey, Price, Thompson, Skousen, and the LLCs. *Jones v. Mackey Price Thompson &*

*Ostler* (*Jones I*), 2015 UT 60, ¶¶ 4–5, 355 P.3d 1000. But we reversed the district court's denial of Jones's request for a jury trial, ruling that Jones was entitled to a jury on his quantum meruit/unjust enrichment claim against MPTO. *Id.* ¶ 5.

### B. MPTO's Trial Objections

¶11  A trial followed. In the course of the proceedings, MPTO objected several times to the testimony offered by Jones's expert witness, John Hansen. In part, MPTO objected that Hansen's trial drawings, use of notes, and some aspects of his methodology were not previously disclosed under rule 26 of the Utah Rules of Civil Procedure and therefore should be excluded from the jury's consideration. The district court overruled these objections. MPTO also objected to Hansen testifying as to what considerations typically went into a fee-splitting agreement, asserting that they were irrelevant in light of the dismissal of Jones's contract claim. The district court also overruled these objections, citing another portion of our *Jones I* decision.

### C. MPTO's Motion for Directed Verdict

¶12  Before the case was submitted to the jury, MPTO sought directed verdict on several of Jones's claims, including his claims that MPTO's December 2006 transfers breached a fiduciary duty to Jones and were fraudulent under the Utah Fraudulent Transfer Act. The district court entered directed verdict against Jones on his claims for breach of fiduciary duty and fraudulent transfer and his request for punitive damages.

¶13  Jones opposed MPTO's motion. On the fiduciary duty claim, he argued that rule 1.15 of the Utah Rules of Professional Conduct and MPTO's alleged agreement to place the funds in a "segregated account" indicated that MPTO owed Jones a fiduciary duty. Jones asserted that MPTO had violated that duty by leaving him out of the process that gave Mackey and Price "much more than they deserved" and paid others who "didn't do anything on . . . Fen-Phen." The district court disagreed, ruling that no statute created an independent duty to Jones and that while the Utah Rules of Professional Conduct might be evidence of a fiduciary duty, they cannot in and of themselves create such a duty.

¶14  In defending his fraudulent transfer claim, Jones focused on several factors laid out in the Utah Fraudulent Transfer Act. He argued that Mackey and Price had received payments "far in excess" of the reasonable value of their services, that they knew that the $165,000 paid to Jones was "woefully inadequate," and that MPTO

had paid the paltry sum to frustrate Jones's ability to prosecute his case. But the district court weighed the various factors laid out in the statute differently. And it concluded that there was insufficient evidence for a jury to find by clear and convincing evidence that MPTO acted with actual intent to hinder, delay, or defraud Jones. In particular, the court emphasized its belief that MPTO transferred the funds only to avoid tax liability and that Jones was not actually harmed by the transfer.

¶15 With respect to his request for punitive damages, Jones asserted that MPTO had acted in blatant disregard of his rights and thus he was entitled to punitive damages on both his fiduciary duty and fraudulent transfer claims. The district court again disagreed, ruling that there was no evidence of "malicious intent" on the part of MPTO.

D. The Verdict and Jones's Request for a Constructive Trust

¶16 On March 7, 2017 a jury awarded Jones a $647,090 verdict against MPTO on his remaining claims. Jones quickly proposed that the district court impose a constructive trust to assist him in obtaining satisfaction of the judgment. MPTO objected, arguing that *Jones I* precluded the possibility of a constructive trust (an equitable remedy) on Jones's quantum meruit claim (a legal claim). The district court agreed with MPTO and denied Jones's request to impose a constructive trust in connection with the judgment.

E. Jones's Rule 25 Motion and MPTO's JNOV Motion

¶17 The post-verdict proceedings continued when Jones sought to hold another Mackey and Price entity responsible for the judgment and MPTO asked the district court to reconsider its decisions on the admissibility of Hansen's expert testimony.

¶18 Prior to and during trial, Mackey and Price had maintained a website for the newly named "Mackey Price & Mecham" at the web address www.mackeyprice.com. The firm listed a phone number and described itself as a "business law firm" comprised of four attorneys: Mackey, Price, and two others. But just two days after the jury verdict, on March 9, 2017, Mackey and Price formed Mackey Price, LLC. The LLC's Certificate of Organization listed the same address as MPTO's, naming Mackey as the registered agent and Mackey and Price as co-managers. Mackey and Price also transferred its website to Mackey Price, LLC, which listed the same phone

number as before and again described itself as a "business law firm" comprised of the same four attorneys.[1]

¶19 In June 2017 the district court held argument on Jones's proposed form of judgment. The court expressed concern that MPTO had reorganized as Mackey Price, LLC to avoid paying the judgment and wondered whether MPTO was engaged in a game of "legal whack-a-mole." At the conclusion of the hearing, the district court gave MPTO the opportunity to submit a brief on whether Mackey Price, LLC should be joined as a party under rule 21 of the Utah Rules of Civil Procedure. MPTO availed itself of that opportunity, asserting that rule 21 did not obviate the requirement for the court to exercise personal jurisdiction via service of a summons and complaint. For its part, Mackey Price, LLC made a special appearance for the limited purpose of contesting the court's jurisdiction. Neither entity addressed the allegation that Mackey Price, LLC had been formed to avoid the judgment. The district court entered a judgment against MPTO, including Mackey Price, LLC in the judgment's definition of MPTO without any findings of fact or conclusions of law explaining the basis for that decision.

¶20 A few weeks later, Mackey and Price executed security agreements in favor of themselves on behalf of Mackey Price, LLC, whereby Mackey and Price acquired a secured interest in the LLC's personal and fixture property, inventory, equipment, instruments, and other assets in exchange for legal work. Mackey and Price contend that these security agreements justify their decision to pay themselves rather than the judgment.

¶21 Jones filed a notice of appeal from the initial judgment on July 27, 2017. Thereafter, the district court heard argument on MPTO's motion for judgment notwithstanding the verdict (JNOV), which asserted that Jones's expert witness testimony should have been excluded on the grounds that elements of his testimony had not been disclosed prior to trial and that it was contrary to law and established facts. MPTO reiterated the objections it made at trial. It

---

[1] Price later testified that he and Mackey immediately began practicing law and billing their clients through the LLC. It "was made clear to the clients" which business "was going forward," and that services "would be coming from the LLC." Price also confirmed that Mackey Price, LLC had been substituted on the lease at Mackey Price & Mecham's office and begun operating out of the same space.

further alleged that previous rulings regarding MPTO's agreements with Thompson and Skousen meant that MPTO's payments to Thompson and Skousen could not properly be considered part of the benefit Jones had conferred on MPTO. On September 22, 2017, the district court denied MPTO's JNOV motion. But in the same order, it concluded that its decision to extend the judgment to include Mackey Price, LLC as a judgment debtor was void under *Brigham Young University v. Tremco Consultants, Inc.*, 2007 UT 17, 156 P.3d 782. It ordered Jones to prepare an amended judgment and remove Mackey Price, LLC. In so doing, however, the court invited Jones to serve and move to join Mackey Price, LLC under rule 21 or 25 of the Utah Rules of Civil Procedure.

¶22 Jones filed a motion to do just that and served Mackey Price, LLC with rule 4 notice.[2] MPTO and Mackey Price, LLC both filed memoranda in opposition to Jones's motion. Once again, Mackey Price, LLC made its case in a special appearance. MPTO and Mackey Price, LLC first argued that the district court lacked subject matter jurisdiction to rule on the motion. They claimed that once the district court had denied MPTO's JNOV motion on September 22, Jones's July 27 notice of appeal kicked in, shifting jurisdiction to this court. They also argued that the district court lacked personal jurisdiction over Mackey Price, LLC.

¶23 On November 22, 2017, the district court granted Jones's motion without oral argument and again joined Mackey Price, LLC as a party to the judgment, this time under civil rules 21 and 25. In so doing, the district court ruled that it retained jurisdiction because no amended judgment had been entered; in the absence of a final judgment, any notice of appeal was premature. The court also ruled that it had personal jurisdiction over Mackey Price, LLC because Jones had served the LLC in accordance with rule 4. In joining Mackey Price, LLC, the district court noted that it was odd that a party facing a significant judgment (like MPTO) would oppose the joinder of another party if the two really were separate entities. It also stated that if Mackey Price, LLC had disputed the factual allegations, the court would have held an evidentiary hearing to determine whether Mackey Price, LLC was in fact a successor to MPTO. But since Mackey Price, LLC focused "entirely on procedural

---

[2] Around this time, MPTO filed a notice of appeal from the district court's denial of its JNOV motion.

issues," the court found that it was entitled to grant Jones's motion once those procedural arguments were rejected.[3]

¶24   On December 1, 2017 the district court entered an amended judgment that included Mackey Price, LLC as a judgment debtor. Thereafter, Mackey Price, LLC filed a petition for extraordinary relief.

### F. Jones's Effort to Extend Liability to Mackey Price Law

¶25   In January 2018 Mackey and Price formed a third entity, Mackey Price Law. Mackey and Price are the sole shareholders, officers, and directors of Mackey Price Law. Once again, Mackey serves as the registered agent. Moreover, Mackey and Price executed additional security agreements, under which they acquired a secured interest in "All Assets" of Mackey Price Law.

¶26   Jones had initially filed a motion asking the court to rule that MPTO, Mackey, Price, and Mackey Price, LLC were abusing the state's corporation and LLC statutes and that the parties were alter egos of one another. Upon discovering the creation of Mackey Price Law, Jones filed a supplemental motion asking the court to find that Mackey Price Law was also an alter ego and jointly and severally liable for the amended judgment. Following a hearing, the district court relied on *Tremco* and refused to hear Jones's new claims for fraudulent transfer, alter ego, and statutory violations in post-judgment proceedings, or to add Mackey Price Law to the judgment.

### G. The Appeal and Cross-Appeal

¶27   The parties thereafter filed their appeals and cross-appeals, which we consider below. In Part II we consider the arguments raised by Jones on his direct appeal. In Part III we take up the issues on cross-appeal. And in Part IV we synthesize the basis for our decision in order to clarify the questions presented on remand.

---

[3] The district court acknowledged that Mackey had filed a declaration disputing whether certain assets were in fact transferred from MPTO to Mackey Price, LLC, but concluded that "Mackey's testimony fails to challenge the central allegation in the Motion: that Mackey Price, LLC is simply a continuation of Defendant Mackey Price Thompson & Ostler."

## II. JONES'S DIRECT APPEAL

¶28 On direct appeal, Jones challenges the district court's (A) entry of a partial directed verdict; (B) denial of a right to seek a constructive trust in support of the judgment; and (C) refusal to allow him to assert his fraudulent transfer, alter ego, and statutory violations claims in post-judgment proceedings. We affirm in part and reverse in part.

### A. Directed Verdict

¶29 Jones first challenges the district court's decision to take the issues of breach of fiduciary duty, fraudulent transfer, and punitive damages away from the jury. We "review[] trial court rulings on motions for directed verdict for correctness." *Arnold v. Grigsby*, 2018 UT 14, ¶ 10, 417 P.3d 606.

¶30 A directed verdict is in order "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Id.* (alteration in original) (quoting UTAH R. CIV. P. 50(a)(1)). We affirm the entry of directed verdict on the fiduciary duty claim but reverse on the fraudulent transfer and punitive damages claims.

#### 1. Fiduciary Duty

¶31 Jones claims that he was the beneficiary of a trust relationship and that MPTO owed him a fiduciary duty under (i) general trust principles, (ii) Utah Rule of Professional Conduct 1.15(e), and (iii) the "law of the case" doctrine. We disagree and affirm the district court's dismissal of this claim on MPTO's motion for directed verdict.

¶32 Jones first asserts that there was evidence that a trust was created when MPTO placed the Fen-Phen funds in its trust account. He claims that he was a beneficiary of that trust because MPTO knew he claimed an interest in the Fen-Phen proceeds and allegedly agreed to segregate the funds "on that basis." Jones claims support for this view in the fact that MPTO ultimately paid him a portion of the Fen-Phen funds. Thus, in Jones's view, MPTO, as trustee, breached a fiduciary duty to him when it decided "what portion Jones was entitled" to "rather than awaiting the jury's verdict." The alleged breach is in MPTO "selfishly" paying Mackey and Price "and [its] creditors the disputed remaining portion" prior to the resolution of Jones's claims.

¶33 We affirm because we find no evidence of a trustee-beneficiary relationship between Jones and MPTO. Trusts and corresponding fiduciary relationships are generally created by contract, statute, judicial decree, or some manifestation of an intent to create a trust.[4] Jones's situation matches none of these scenarios, and he has not identified a basis for an exception to the general rule.

¶34 Granted, MPTO notified Jones that it had placed the disputed funds in its trust account and would inform him of any decision to distribute funds "reasonably in advance of any distribution actually being made." But Jones cites no record basis for the conclusion that MPTO intended to make or did make a *binding* agreement of any kind, let alone a binding agreement to hold the funds until after the resolution of the case, or to give notice before making distributions. Jones can likewise point to no statute or judicial decree that created a trustee-beneficiary relationship.

¶35 We find no authority for the proposition that a party can unilaterally create a trust and make himself a beneficiary of that trust by the simple expedient of claiming an interest in a pot of money and having another agree to keep him apprised of any distributions. Such a rule would press holders of disputed funds into fiduciary service without their knowledge or consent. That is not the law. And for these reasons we find no basis in general trust principles for a trustee-beneficiary relationship between Jones and MPTO.

¶36 Second, Jones argues that Utah Rule of Professional Conduct 1.15(e) "supports" a finding of a fiduciary duty. Rule 1.15(e) states that "[w]hen in the course of representation a lawyer is in possession of property in which two or more persons (one of whom may be the lawyer) claim interests, the property shall be kept separate by the lawyer until the dispute is resolved." According to Jones, this means that a factfinder could determine that a fiduciary relationship arose

---

[4] *See* UTAH CODE § 75-7-401(1)(b) ("A trust may be created by . . . declaration by the owner of property that the owner holds identifiable property as trustee . . . ."); *id.* § 75-7-402(1)(b) ("A trust is created only if . . . the settlor indicates an intention to create the trust or a statute, judgment, or decree authorizes the creation of a trust . . . ."); 24 AM. JUR. PL. & PR. FORMS *Trusts* § 2 (2020) ("Although technical words, such as 'trust' or 'trustee,' are not required in order to create the trust, the intention to create a trust must nevertheless be apparent.").

once MPTO knew the ownership of the funds was disputed and agreed to hold them in a trust account.

¶37 But as Jones himself acknowledges, rule 1.15(e) can only *support* a finding of fiduciary duty—it can't *create* one. The "Utah Rules of Professional Conduct are not designed to create a basis for civil liability." *Archuleta v. Hughes*, 969 P.2d 409, 414 (Utah 1998). Nor do the rules create a legal presumption that a duty has been breached. *Id.* Without a basis in general trust principles, rule 1.15(e) alone cannot support Jones's breach of fiduciary duty claim.

¶38 Finally, Jones argues that the "law of the case" doctrine mandates a finding of fiduciary duty. This doctrine states that "a decision made on an issue during one stage of a case" is sometimes "binding in successive stages of the same litigation." *IHC Health Servs., Inc. v. D. & K. Mgmt., Inc.*, 2008 UT 73, ¶ 26, 196 P.3d 588 (citation omitted). Jones contends that the district court had already determined at the summary judgment stage that Mackey and Price owed him a fiduciary duty. And he asserts that that determination should have bound the district court moving forward.

¶39 But the district court made no such finding. Instead, the court simply concluded, in response to a motion for summary judgment, that "a fact finder *could* determine that fiduciary duties were voluntarily assumed" and "*could* determine that Rule 1.15(e) would apply." (Emphases added.) These were not determinations that a fiduciary duty in fact existed. In any event, the district court statements were subject to reconsideration by a successor judge. As we recently clarified, the law of the case leaves a successor judge broad discretion to revisit any "nonfinal decision entered previously." *Build, Inc. v. Utah Dep't of Transp.*, 2018 UT 34, ¶ 27, 428 P.3d 995.

¶40 Because neither general trust principles, rule 1.15(e), nor the law-of-the-case doctrine supports a finding that MPTO owed Jones a fiduciary duty, we affirm the district court's entry of partial directed verdict on Jones's claim for breach of fiduciary duty.

### 2. Fraudulent Transfer

¶41 Jones next challenges the dismissal of his fraudulent transfer claim, arguing that there was sufficient evidence for the jury to find that MPTO had acted with actual intent to hinder, delay, or defraud Jones when it distributed the Fen-Phen funds. In dismissing this claim, the district court went through the list of factors that the Fraudulent Transfer Act sets forth for determining a defendant's "actual intent." These include whether the transfer was to an insider,

whether the debtor retained possession or control of the property after the transfer, and whether the transfer was concealed or made after the threat of a lawsuit. UTAH CODE § 25-6-5(2) (2016).[5] Based on these factors, the district court concluded that "no reasonable jury could make a determination [by clear and convincing evidence] that there was a violation of the Fraudulent Transfer Act or that these transfers took place [with] an intent to hinder, delay, or defraud anyone."

¶42 The district court first acknowledged that some of the transfer in question was to insiders Mackey and Price, who thus retained possession or control of some of the funds. But the court also found that the transfer was disclosed (not concealed), that the transfer didn't consist of substantially all of MPTO's assets, and that MPTO didn't abscond, conceal assets, become insolvent, make the transfer before or after a substantial debt was incurred, or transfer essential assets—all of which weighed in favor of the defendants. Because the suit "was filed well in advance of the transfer," the district court said that it did not matter that the defendants had been sued before they made the transfer. In addition, the district court stated that it didn't think it "weigh[ed] in favor of either party" whether Mackey and Price had received their portion of the funds as reasonable consideration (even if that fact was in dispute) since the defendants "certainly believe[d]" that it was a reasonable distribution. Lastly, the district court relied heavily on the notion that "the only credible evidence in the record with respect to this transfer [wa]s that the defendants became aware of a potential tax liability." The district court concluded that there was "no evidence to contravene the position of the defendants that they transferred this money solely in order to avoid paying the taxes on it," and thus no way for a jury to conclude that MPTO's transfers were fraudulent.

¶43 We disagree and reverse. Before reaching the merits, we address two threshold questions raised in the briefing on this appeal.

---

[5] We cite the 2016 version of the fraudulent transfer statute throughout, though it is unclear which version of the statute the district court applied in its March 2017 analysis. Because the statute remained the same from the time Jones added the fraudulent transfer claim to his complaint (February 2007) to the time the court entered directed verdict (March 2017), it does not matter which version we cite so long as we do not use the amended version that went into effect in May 2017. *See infra* ¶¶ 46–50.

We first conclude that a "mixed motive" is sufficient to establish an "actual intent" to hinder, delay, or defraud under the Fraudulent Transfer Act. We then hold that Jones was required to establish such actual intent by clear and convincing evidence. With these premises in mind, we conclude that there was sufficient evidence in the trial record for a jury to find by clear and convincing evidence that there was a fraudulent transfer in this case.

### a. Mixed motive

¶44 We begin by clarifying the governing legal standard on a question that has been decided in other states but never in Utah. The question is whether "actual intent" to hinder, delay, or defraud requires proof that such intent was the sole or primary purpose of the defendant, or whether proof of a "mixed motive" is sufficient. We conclude that there is no requirement that the intent to hinder, delay, or defraud be the sole or even primary motive of the defendant. This follows from the text of the statute, which requires proof only that a defendant act "with actual intent" to hinder, delay, or defraud. UTAH CODE § 25-6-5(1)(a) (2016). It would add an unstated qualifier to require that a defendant acting "with actual intent" act *solely* or *primarily* with that actual intent. And such an addition is foreclosed by our canons of interpretation.[6]

¶45 Utah cases have not addressed this "mixed motive" question directly. But they have spoken of *an* actual intent to hinder, delay, or defraud when interpreting the Fraudulent Transfer Act or its variants.[7] And courts in other jurisdictions have interpreted

---

[6] *See Nevares v. M.L.S.*, 2015 UT 34, ¶ 34, 345 P.3d 719 (rejecting an interpretation of a statute on the ground that it ran afoul of the canon against "read[ing] into the statute a limitation not expressly stated on its face"); *Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 18, 248 P.3d 465 (declining to "add conditions . . . that are not set forth expressly by legislation").

[7] *See, e.g.*, *Butler v. Wilkinson*, 740 P.2d 1244, 1261 (Utah 1987) (interpreting the Utah Fraudulent Conveyance Act to mean that "the defendant must have *an* actual fraudulent intent" (emphasis added)); *Selvage v. J.J. Johnson & Assocs.*, 910 P.2d 1252, 1261–62 (Utah Ct. App. 1996) (stating repeatedly that there was enough evidence to infer "*an* actual intent to hinder, delay or defraud" in part because one witness testified that, "*part of* the decision regarding the date for placing Johnson into bankruptcy was to allow the one-year statute of

(continued . . .)

parallel language of the Uniform Fraudulent Transfer Act in the same way—holding that actual intent to hinder, delay, or defraud may be established on the ground that at least one of the defendant's motives was an impermissible one.[8] We agree with these holdings and disagree with the contrary view endorsed in other jurisdictions.[9] We conclude that a plaintiff may carry her burden of showing that a defendant had actual intent to hinder, delay, or defraud without

_____

limitation to expire," and thus the defendant's actions "indicated *an* intentional attempt to hinder, delay or defraud rather than *merely* a bona fide purpose to reduce Johnson's debt to [defendant]" (emphases added)).

[8] *See, e.g.*, *In re Blatstein*, 192 F.3d 88, 97 (3d Cir. 1999) ("Our inquiry under [the Pennsylvania UFTA] is whether [the] [debtor] intended to hinder or delay a creditor. If he did, he had the intent penalized by the statute notwithstanding any other motivation he may have had for the transfer." (third alteration in original) (citation omitted)); *In re Tronox Inc.*, 503 B.R. 239, 279 (Bankr. S.D.N.Y. 2013) (holding that Oklahoma's fraudulent transfer law does not require the plaintiff to show that the "main or only purpose of the transfer was defendant's actual intent to damage a creditor" (citation and internal quotation marks omitted)); *In re Stanley*, 384 B.R. 788, 799 (Bankr. S.D. Ohio 2008) (ruling that under Ohio's UFTA, "'[a]ctual intent' may be present whether the transfer was motivated entirely or merely in part by a desire to hinder, delay or defraud creditors"); *Bertram v. WFI Stadium, Inc.*, 41 A.3d 1239, 1247 (D.C. 2012) ("[E]ven if a debtor has at least one non-fraudulent motive for a transaction, the additional motive of effecting the transaction to hinder a creditor 'is a sufficient ground for an unassailable conclusion [of] . . . fraudulent intent.'" (second and third alterations in original) (citation omitted).

[9] *See, e.g.*, *Tindall v. H & S Homes, LLC*, 757 F. Supp. 2d 1339, 1364 (M.D. Ga. 2011) ("The facts here suggest that . . . Defendants' *dominant* intent appears to have been to hinder, delay or defraud Plaintiff . . . . '[Actual] intent will be found if the circumstances indicate that the *main* or *only* purpose of the transfer was to prevent a lawful creditor from collecting a debt.'" (emphases added) (citations omitted)); *In re Schneider*, 417 B.R. 907, 915 (Bankr. N.D. Ill. 2009) ("If the *primary* motivation for the transfer is based on fraudulent intent, other motivations may be urged, but they are irrelevant." (emphasis added)).

showing that it was the defendant's sole or primary motivation. Thus, the question is whether there existed a legally sufficient evidentiary basis for a reasonable jury to conclude that MPTO made the payments from its trust account with *an* actual intent to hinder, delay, or defraud Jones.

### b. Standard of proof

¶46  We next consider what standard of proof Jones was required to meet on his fraudulent transfer claim. The standard is clearly set forth in the statute as it stands today. *See* UTAH CODE § 25-6-202. Under the current version of the statute (effective May 2017), a transfer made with "actual intent to hinder, delay, or defraud" is not "fraudulent" but merely "voidable." *Id.* § 25-6-202(1). And a claim under this provision requires proof only by a "preponderance of the evidence." *Id.* § 25-6-202(3).

¶47  But this altered the operative burden of proof under Utah law. The pre-2017 statute treated all transfers made with "actual intent to hinder, delay, or defraud" as "fraudulent." *See* UTAH CODE § 25-6-5(1) (2016). Under the old statute, *any* "transfer made or obligation incurred by a debtor *is fraudulent* as to a creditor[] . . . if the debtor made the transfer or incurred the obligation[] . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." *Id.* (emphasis added). And under Utah law, a claim of fraud must be proven by clear and convincing evidence.[10]

¶48  This highlights an important distinction between the 2017 statute and the one it amended. Under the pre-2017 law, the plaintiff bore the burden of proving all claims asserting intent to hinder,

---

[10] *See Daines v. Vincent*, 2008 UT 51, ¶ 38, 190 P.3d 1269 ("To prevail on a claim of fraudulent inducement, [the plaintiff] must present clear and convincing evidence . . . ."); *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 27, 70 P.3d 35 ("[F]raud is a wrong of such nature that it must be shown by clear and convincing proof and will not lie in mere suspicion or innuendo." (alteration in original) (citation and internal quotation marks omitted)); *Lundstrom v. Radio Corp. of Am.*, 405 P.2d 339, 341 (Utah 1965) (same); *Ferrell v. Wiswell*, 143 P. 582, 583–84 (Utah 1914) ("We have no right to overlook the wholesome rule that where deeds or contracts are sought to be vacated . . . upon the ground of fraud and deceit, the burden of proving the alleged fraud is upon him who asserts it; moreover, that the fraud must be established by clear and convincing evidence.").

delay, or defraud by clear and convincing evidence. But under the statute that went into effect in May 2017, the plaintiff bears the burden of proving such claims only by a preponderance of evidence.

¶49 This triggers the question of which version of the statute applies. And that implicates standards set forth in our decision in *State v. Clark*, 2011 UT 23, 251 P.3d 829. Under *Clark* "we apply the law as it exists at the time of the event regulated by the law in question." *Id.* ¶ 13. "On matters of *substance* the parties' primary rights and duties are dictated by the law in effect at the time of their underlying primary conduct (e.g., the conduct giving rise to a criminal charge or civil claim)." *Id.* ¶ 14. "Thus, if a law regulates a breach of contract or a tort, we apply the law as it exists . . . at the time of the event giving rise to [the] cause of action." *Id.* ¶ 13. "When it comes to the parties' *procedural* rights and responsibilities, however, the relevant underlying conduct is different: the relevant occurrence for such purposes is the underlying procedural act (e.g., filing a motion or seeking an appeal)." *Id.* ¶ 14. "The law governing th[e] [relevant] procedural occurrence is thus the law in effect at the time of the procedural act . . . ." *Id.*

¶50 We have not decided whether a statute altering the standard of proof in a civil proceeding is substantive or procedural. Nor have we decided whether a statute effecting such change can or should be applied retroactively.[11] And we need not do so here. The statute lowering the standard of proof to a preponderance of evidence was not in effect until May 2017. By then, all the relevant events even arguably regulated by the statute—whether the substantive "primary conduct" giving rise to the alleged fraudulent transfer (December 2006), or the procedural filing of the relevant pleadings (February 2007) and presentation of proof at trial (March 2017)—had already taken place. For that reason there is no basis for application of the new statute to this case. And Jones was thus required to prove his claim for fraudulent transfer by clear and convincing evidence.

---

[11] In criminal proceedings, we have held that "statutes which 'alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction when the crime was committed'" may not be applied retroactively. *See State v. Schreuder*, 726 P.2d 1215, 1218 (Utah 1986) (citation omitted). But that decision was based on the Ex Post Facto Clauses of the federal and state constitutions, *id.*, not the framework laid out in *State v. Clark*, 2011 UT 23, 251 P.3d 829.

### c. Application of the law to the facts in the record

¶51 We may reverse the district court's decision dismissing Jones's fraudulent transfer claim if we find that the jury had a "legally sufficient evidentiary basis" to find for Jones on this claim. UTAH R. CIV. P. 50(a)(1). Under the standards set forth above, we must decide whether there was a sufficient basis for a reasonable jury to find by clear and convincing evidence that MPTO had an actual intent to hinder or delay Jones in seeking his share of the funds. We reverse because we conclude that there was sufficient evidence in the record for a reasonable jury to so conclude.

¶52 The district court leaned heavily on its finding that "the only credible evidence in the record with respect to this transfer is that the defendants became aware of a potential tax liability." Conversely, the court stated that there was "no evidence to contravene the position of the defendants that they transferred this money solely in order to avoid paying the taxes on it." We see the record differently. The court may have been correct to suggest that the only *direct* evidence of MPTO's motives went to tax avoidance. But *circumstantial* evidence may also be considered. And we think there was ample circumstantial evidence in the record to support a jury determination (by clear and convincing evidence) that at least one of MPTO's motives was to hinder or delay Jones.

¶53 The district court also cited the fact that Jones had filed his lawsuit several months before MPTO made the transfer. But this would not have prevented the jury from drawing a negative inference from the fact that, "before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit." UTAH CODE § 25-6-5(2)(d) (2016). The fact that Jones filed his lawsuit several months before the transfer doesn't categorically exonerate the defendants' motivations. A reasonable jury could have found that the fact the defendants were being sued cut in favor of Jones. And given that the jury verdict awarded Jones virtually all the Fen-Phen litigation funds, a reasonable jury could have decided that the large transfers to Mackey and Price did not constitute "the value of the consideration . . . reasonably equivalent to the value of the asset transferred." *Id.* § 25-6-5(2)(h). That too would have weighed in favor of Jones.

¶54 We also think the district court placed too much weight on MPTO's supposed tax motivations. A reasonable jury could have wondered why there was no written or paid advice regarding the alleged tax problem—a potential weakness that Jones probed at trial. A reasonable jury also could have found Mackey and Price to be

lacking credibility in general. At trial, Jones's attorney tried to uncover exactly how Mackey and Price arrived at the $165,000 figure for Jones, as they did not involve Jones in their calculations. Price testified that in calculating how many of the Fen-Phen funds to send Jones, he and Mackey took into account damages that Jones caused the firm in his handling of two specific cases. But Mackey testified to just the opposite. Mackey said they did not take into account the fact that Jones's work had been "deficient" in certain cases. A reasonable jury could have discounted Mackey's and Price's testimony in light of this contradiction. At a minimum, a reasonable jury could have concluded that Mackey and Price were being less than forthcoming on the issue, as they failed to offer any kind of concrete formula for MPTO's payment to Jones and repeatedly insisted that they were simply trying to "be fair to Mr. Jones" by looking at "various factors."

¶55 Any jury may be less inclined to find for a party whose credibility is called into question. But Mackey's and Price's credibility on this point was especially important. While MPTO's tax fears might adequately explain why MPTO distributed the funds *when* it did, they do nothing to explain why MPTO paid out *the sums* it did or why it chose to pay the entities it did. The decision to pay Mackey, Price, and other creditors decreased the amount of Fen-Phen funds in MPTO's possession, and thus how much and how quickly Jones could reasonably expect to recover in the event of a favorable outcome at trial. If the jury believed that MPTO paid Jones based on a reasonable, good-faith determination of what it believed Jones was owed, the jury likely would have found that MPTO simply made the transfers with the intent to avoid taxes and pay off creditors. But if the jury believed that MPTO was trying to lowball Jones and divest itself of the rest of the funds, the jury very well could have inferred that MPTO was also trying to put itself in a position where it no longer had what Jones claimed (and MPTO believed) he was owed.

¶56 MPTO's failure to explain its calculation of Jones's payment, as well as its possible offset for Jones's alleged mishandling of cases, make it more likely that MPTO also acted to hinder or delay Jones in his efforts to recover his share of the Fen-Phen fees. We hold that there was sufficient evidence for a reasonable jury to conclude by clear and convincing evidence that MPTO acted with actual intent to hinder or delay Jones. And we accordingly reverse the directed verdict on this claim.

### 3. Punitive Damages

¶57 Jones next challenges the district court's dismissal of his claim for punitive damages. By statute, punitive damages are generally available "only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omissions of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others." UTAH CODE § 78B-8-201(1)(a); *id.* § 78-18-1(1)(a) (2006). In rejecting Jones's request for punitive damages, the district court relied on the notion that there was "no evidence of malice" on MPTO's part. We reverse in light of our decision to reinstate the fraudulent transfer claim. With the fraudulent transfer claim in place, Jones is entitled to pursue his claim for punitive damages.

### B. Constructive Trust

¶58 Jones also challenges the district court's ruling denying his request for the imposition of a constructive trust. In the proceedings below, Jones asserted that he had established all the prerequisites for the imposition of a constructive trust. The district court declined to reach that question, however, because it concluded that our ruling in *Jones I* "specifically rejected the availability of a constructive trust as a potential remedy" in this case.

¶59 We concede that there was a degree of imprecision in our discussion in *Jones I* on this point. But we clarify that our analysis in *Jones I* did not foreclose the possibility of a constructive trust in this case and remand to allow the district court to decide in the first instance whether Jones has established the preconditions for the imposition of a constructive trust.

¶60 In *Jones I* we held that Jones had a right to a jury trial because he sought "only money damages" and requested a "legal remedy, not an equitable one." 2015 UT 60, ¶ 51, 355 P.3d 1000. With this in mind, the district court thought that Jones was seeking to move the goalposts on remand. It thought it unfair to allow Jones to "seek[] to obtain an equitable remedy (a constructive trust)" after convincing this court that "his claim seeks a legal remedy (monetary relief)."

¶61 We can see how the district court could read our *Jones I* opinion in this way. But our analysis in *Jones I*, though not as precise as it might have been, was not an indication that Jones could not seek the imposition of a constructive trust. In *Jones I* we held only

that the quantum meruit/unjust enrichment claim itself was legal in nature. In the briefing in *Jones I*, Jones never proffered an intent to forgo an equitable remedy in the aid of the collection on his legal claim. Indeed, we noted that Jones was not just asserting a claim for quantum meruit/unjust enrichment but also "ask[ing] the court to hold the fees received by Mackey Price in constructive trust." *Id.* ¶ 51 n.58. And our analysis did not foreclose the availability of such relief; the question was simply not presented to us.

¶62 We thus conclude that *Jones I* does not categorically foreclose Jones from seeking the imposition of a constructive trust. Our case law supports the availability of equitable remedies in support of the collection of damages on a legal claim. *See Ong Int'l (U.S.A.) Inc. v. 11th Ave. Corp.*, 850 P.2d 447, 457 (Utah 1993); *see also* RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 4 cmt. d (AM. LAW INST. 2011). Constructive trusts, moreover, have properly been imposed to aid in collecting on a legal claim.[12] And that is all that Jones has asked for here.

¶63 We reverse on that basis. In so doing we are not endorsing the propriety of a constructive trust in the circumstances of this case. *See Wilcox v. Anchor Wate, Co.*, 2007 UT 39, ¶ 34, 164 P.3d 353 (identifying factors for consideration in the imposition of a constructive trust). We leave the resolution of that question for the district court on remand.

### C. New Claims in Post-Judgment Proceedings

¶64 Jones's last contention is his challenge to the district court's determination that he could not prosecute his claims for fraudulent transfer, alter ego, and statutory violations in post-judgment proceedings. The district court held that such claims were foreclosed under our decision in *Brigham Young University v. Tremco Consultants, Inc.*, 2007 UT 17, 156 P.3d 782. We agree and affirm.

---

[12] *See Butler*, 740 P.2d at 1253, 1262 (ruling that plaintiffs were entitled to a constructive trust on their fraudulent conveyance claim to prevent defendants from unjustly enriching themselves from proceeds not yet received from a land sale); RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 4 cmt. e, illus. 9–10 (AM. LAW INST. 2011) (endorsing the availability of a constructive trust in connection with a claim for collection of embezzled funds).

¶65 *Tremco* involved a plaintiff who sought to execute a judgment on the assets of persons not named as parties to the lawsuit or judgment. *Id.* ¶¶ 12–13, 36. In that case, the court held that claims founded on "alter ego" and "fraudulent transfer" are "civil action[s] that must be prosecuted in the manner prescribed in the Utah Rules of Civil Procedure, commencing with the filing of a summons and complaint and not the abbreviated post-judgment collection procedures of rule 69." *Id.* ¶ 39. "In light of the status conferred through the development of the common law and legislative action upon alter ego and fraudulent transfer" claims, a plaintiff may not seek to advance these claims in post-judgment proceedings in an attempt to extend liability for a judgment to new parties. *Id.*; *see also id.* ¶ 45. Instead, such claims must be initiated and litigated in the ordinary course under our rules of civil procedure, with rights of discovery, motion practice, trial, etc. *Id.* ¶ 40.

¶66 Jones seeks to distinguish this case on the ground that he is invoking rules 21 and 25 of the Utah Rules of Civil Procedure in an attempt to "substitute" Mackey, Price, and Mackey Price Law as "successors" to MPTO. In support of this view, Jones notes that the district court has already allowed Mackey Price, LLC to be substituted as a successor entity under rules 21 and 25. Jones claims that his bid to add Mackey, Price, and Mackey Price Law is no different.

¶67 We disagree. The proceedings seeking to add Mackey Price, LLC as a party to the judgment are distinct from the proceedings at issue here. *See infra* ¶¶ 91–93. When Jones sought to extend the judgment to Mackey Price, LLC he was asserting only that Mackey Price, LLC was a successor to MPTO that should be substituted in as a named party to the judgment. But the proceedings seeking to add Mackey, Price, and Mackey Price Law were different. There, Jones asserted new, substantive common-law and statutory claims—fraudulent transfer, alter ego, and other statutory violations—against an unnamed, unjoined party. These are precisely the kinds of claims that cannot be asserted in post-judgment proceedings under *Tremco*.

¶68 We affirm on this basis.[13] Jones's claims against Mackey, Price, and Mackey Price Law are separate civil actions with

---

[13] For reasons explained below, *see infra* ¶¶ 89–90, the district court may have also lacked jurisdiction to allow Jones to assert new claims for liability against Mackey, Price, and Mackey Price Law. Jones's July 27, 2017 notice of appeal became effective, and generally

(continued . . .)

common-law or statutory status triggering the need to initiate new proceedings in accordance with the Utah Rules of Civil Procedure. Jones has no right to bypass the protections of our rules by tacking on a brand-new claim in the abbreviated mechanism of a post-judgment proceeding. This was our holding in *Tremco* and we stand by it here. Jones has identified no persuasive basis for distinguishing our precedent or for departing from it, and we thus reinforce *Tremco* and affirm on that basis.

## III. CROSS-APPEALS

¶69 Both MPTO and Mackey Price, LLC raise claims on cross-appeal: (A) MPTO challenges the district court's decision to allow Jones's expert witness to testify in support of his quantum meruit/unjust enrichment claim; and (B) Mackey Price, LLC asserts that the district court erred in adding it as a party to the judgment under rules 21 and 25 of the Utah Rules of Civil Procedure. We affirm in part and reverse in part.

### A. MPTO's Cross-Appeal

¶70 MPTO challenges the district court's decision allowing the jury to consider expert testimony from John Hansen, the expert witness called by Jones in support of his claim for quantum meruit/unjust enrichment. In pretrial proceedings, Jones had produced an expert witness report for Hansen under the then-applicable version of rule 26 of the Utah Rules of Civil

---

deprived the court of jurisdiction over most matters, when the district court entered its amended final judgment on December 1, 2017, *see infra* ¶¶ 89–90—*before* the district court denied Jones's request to assert new claims of liability against these parties.

Despite the notice of appeal, however, the district court retained jurisdiction over certain post-judgment proceedings. *See Garver v. Rosenberg*, 2014 UT 42, ¶ 10 n.12, 347 P.3d 380. So the court retained the power to decide whether it was appropriate to allow Jones to assert new claims for liability against Mackey, Price, and Mackey Price Law. It had jurisdiction to determine its own jurisdiction. In rejecting Jones's attempt to assert new claims for liability, the district court was effectively concluding that such claims could not properly be asserted within a post-judgment proceeding. That would hold both as a matter of jurisdiction and under *Tremco*.

Procedure.[14] MPTO had also had the opportunity to depose Hansen. But at trial in 2017, MPTO made objections (some clearer than others) that suggested it believed that Hansen's testimony was going beyond the scope of the testimony forecast in the report and deposition and should be foreclosed on that basis. Specifically, MPTO objected to Hansen's drawing during his testimony, use of handwritten notes, and alleged reliance on information and methodology not cited in his initial report and deposition. The district court overruled all of MPTO's objections regarding inadequate disclosure, although at one point the district judge appeared to indicate that he had not read Hansen's report. MPTO also argued that since Jones no longer had a contract claim, Hansen could not testify as to what types of considerations typically go into a fee-splitting arrangement. The district court overruled this latter point by citing our decision in *Jones I*.

¶71 After trial in its JNOV motion, MPTO also objected to the admissibility of Hansen's testimony on the ground that it was foreclosed by prior summary judgment rulings that suggested that the funds MPTO paid to Thompson and Skousen never properly belonged to MPTO. MPTO argued that these funds therefore could not be considered part of the benefit Jones conferred on MPTO. Again, the district court rejected MPTO's arguments.

¶72 MPTO contends that the quantum meruit/unjust enrichment jury verdict cannot stand without Hansen's testimony. And it seeks to overturn the verdict on the above grounds. We review the district court's determinations on the admissibility of expert testimony for abuse of discretion, *Northgate Vill. Dev., LC v. City of Orem*, 2019 UT 59, ¶ 14, 450 P.3d 1117, and affirm.

1. Adequacy of Jones's Pretrial Disclosures

¶73 The 2006 version of rule 26(a)(3)(B) of the Utah Rules of Civil Procedure stated that an expert report should contain "the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; [and] a summary of the grounds for each opinion." As the

---

[14] Here, the adequacy of Jones's pretrial disclosures is judged by the standard applicable at the time he was required to make them. *See supra* ¶ 49.

language suggests, this was not a demanding standard.[15] Nonetheless, MPTO argues that Hansen's testimony was inadequately disclosed because his trial testimony strayed too far from his expert report and deposition. We disagree.

¶74 At trial, MPTO was not always clear about the precise nature of its objections—or even about the fact that it was making a rule 26 objection. And the imprecisions in MPTO's objections had an effect on the district court's stated grounds for its rulings. Yet MPTO did object at least twice that Hansen was straying from his report. And in the context in which the objections were raised, we affirm the district court's rulings.

¶75 MPTO's first objection—to Hansen making an illustration to help convey what he was saying—clearly lacked merit. Hansen was simply mapping out what he was explaining, not introducing a new exhibit or document. It was in this context that the district court indicated that it "ha[d]n't seen the report and ha[d]n't seen the exhibit" that Hansen was in the process of drawing.[16] The district court's statement made sense in this context. This was not an admission by the court that it had no basis for assessing the viability of any of MPTO's objections. It was an acknowledgement that the expert was entitled to make an illustration expanding on the testimony in his report, and on that point we agree.

---

[15] The Advisory Committee Notes to the new rule 26 illustrate how the old rule operated in practice: "[B]ecause experts often were allowed to deviate from the opinions disclosed, attorneys typically would take the expert's deposition to ensure the expert would not offer 'surprise' testimony at trial, thereby increasing rather than decreasing the overall cost. The amendments seek to remedy this and other costs associated with expert discovery by, among other things, allowing the opponent to choose either a deposition of the expert or a written report, but not both; in the case of written reports, requiring more comprehensive disclosures, signed by the expert, and making clear that experts will not be allowed to testify beyond what is fairly disclosed in a report . . . ."

[16] MPTO did specifically raise the objection that "[t]here's nothing in [his report] about the fee split with any clients[,]" but this was also in the context of the objection to Hansen's illustration. And again we affirm the decision to overrule that objection.

¶76 MPTO's next objection was to Hansen's discussion of Thompson's and Skousen's affiliation with "national class counsel." But after the district court struck Hansen's initial answer, MPTO dropped the matter. To be sure, MPTO also challenged Hansen's alleged reliance on documents not disclosed in his report, including Hansen's use of some last-minute notes on the stand. But these notes didn't stray from the substance of Hansen's prior disclosures, and the judge marked Hansen's notes as an exhibit for MPTO's counsel to use. As for Hansen's other supposed reliance on information "not in the report," Hansen's testimony was based on what he had heard others testify at trial. The district court was well within its rights to overrule MPTO's vague objections on these points.[17]

¶77 MPTO claims that the district court never conducted a proper rule 26 analysis because it incorrectly relied on *Jones I* to excuse Hansen's "new," inadequately disclosed testimony. But the record belies this. At trial, MPTO's main—and continuing—objection apparently went to Hansen's discussion of fee-splitting arrangements in general. MPTO's counsel argued that Hansen's testimony on this point was inappropriate since there was "no agreement" between Jones and MPTO and the trial was focused on Jones's quantum meruit/unjust enrichment claim. It was in this context that the district court finally quoted from *Jones I* and reasoned that "[t]o the extent that the [Utah] Supreme Court has given me some leeway or some discretion in allowing an expert witness or evidence regarding the other appropriate factors, that's what Mr. Hansen is doing. . . . I believe that this not only is appropriate but, basically, is what the Supreme Court has ordered me to allow." We affirm that ruling. The district court was simply making the point that even though there was no contract between Jones and MPTO, it was appropriate for Hansen to testify about what factors usually went into fee-splitting agreements because those factors were relevant for determining the reasonable value of Jones's services. It was not ruling that *Jones I* allowed Jones to skirt

---

[17] MPTO also cross-examined Hansen extensively about specific figures that were not in his report, repeatedly invoking the Utah Rules of Civil Procedure. But haranguing a witness on cross-examination about the plaintiff's obligations under the rules is not the same as making a specific rule 26 objection for the district court to rule on.

rule 26 pretrial disclosure requirements regarding Hansen's testimony.

¶78 The district court's ruling on MPTO's JNOV motion confirms that the court relied on Hansen's testimony at trial and not on *Jones I* in overruling MPTO's rule 26 objections. In that ruling the court said that it was "not persuaded that Mr. Hansen strayed from the substance of his expert report at trial," but rather found that "Mr. Hansen testified consistent with his pretrial disclosures."

¶79 We agree. Hansen's report stated that it was based on his "evaluation and professional opinion" and his experience as a law firm shareholder, practicing attorney in the Salt Lake area for twenty-five years, former managing partner of a law firm, and former president of the Utah Chapter of the Federal Bar Association. It explained that he has specific knowledge and experience with personal injury claims, contingency fees, and fee allocations between multiple attorneys. It also named factors that Hansen took into account in concluding that Jones was entitled to 80 percent of the Fen-Phen fees. These factors included Jones's unique employment standing, personal expenses, commitment, leadership, time, and origination. In his deposition, Hansen likewise highlighted his professional experience with contingency fee cases and fee-splitting between attorneys, including how fee splits often depend on the circumstances surrounding the representation. He said that he arrived at the 80 percent figure "based on [his] experience in dealing with contingency fees and fair resolution" and factors such as risk-taking, leadership, commitment, out-of-pocket expenses, and work distribution.

¶80 MPTO asserts that Hansen's trial testimony "deviated materially" from these pretrial disclosures because he used terms like "standard practices in the community" and "community standards" and gave more specific percentage breakdowns and dollar figures. But Hansen's testimony included numerous references to his experience with contingency fee and fee-splitting cases, based on his personal practice and observations during the course of his professional career. The bulk of his testimony concerned the factors listed in his report. All Hansen did at trial was lump these factors into discrete categories (risks, resources, and responsibilities). The same factors still led to the same 80 percent determination.

¶81 Hansen's experience, methodology, and opinions were all highlighted in his report and deposition. MPTO was thus on notice about the substance of Hansen's trial testimony. There is no undue

surprise when experts summarize factors listed in their report into succinct groupings or use slightly different terminology. We hold that Hansen's testimony was properly admitted and that Jones's disclosure of Hansen's expert testimony was adequate under the then-applicable rule 26 of the Utah Rules of Civil Procedure.

2. Hansen's Inclusion of the Thompson & Skousen Payment

¶82 In post-trial proceedings, MPTO also contended that Hansen's testimony should have been excluded because it was contrary to established facts. Specifically, MPTO argued that Hansen's testimony was deficient because it included MPTO's payment to Thompson & Skousen as part of the reasonable value of Jones's services. According to MPTO, past rulings had "created a 'ceiling' on Plaintiff's damages . . . that Mr. Hansen failed to account for."

¶83 The district court was not bound by past district court judges' summary judgment rulings. *See Build, Inc. v. Utah Dep't of Transp.*, 2018 UT 34, ¶¶ 30–31, 428 P.3d 995. In any case, the past rulings concerned whether Jones could pursue a claim against Thompson & Skousen for the payment it received from MPTO. But whether Jones has a claim against Thompson & Skousen has nothing to do with how much benefit Jones conferred on MPTO. MPTO asserts that not accounting for the Thompson & Skousen payment means that MPTO ultimately lost $59,000 processing the Fen-Phen suits. This, MPTO, argues, contradicts Jones's theory that MPTO was unjustly enriched. But whether MPTO made a good deal when all is said and done does not affect the value of the benefit that MPTO received from Jones. Like the district court, this court "does not view as unreasonable Mr. Hansen's decision to use the total amount received by Defendants as the starting point for Plaintiff's *quantum meruit* claim."

¶84 We have even less trouble affirming on this point because MPTO could have presented evidence of the Thompson & Skousen payment to the jury and argued that Jones's damages should be reduced accordingly. But it chose not to. In fact, it affirmatively prevented the jury from hearing evidence of the Thompson & Skousen payment. Having kept evidence of the payment from the jury, MPTO cannot now complain that the jury didn't account for it in its calculations.

¶85 Hansen's testimony was adequately disclosed. It was not contrary to law or established facts. Because Hansen's testimony was properly admitted, the jury's verdict was based on sufficient evidence and not contrary to law. We affirm the district court's

admission of Hansen's testimony and its denial of MPTO's JNOV motion.

## B. Mackey Price, LLC's Cross-Appeal

¶86 Mackey Price, LLC challenges the district court's authority to add it to the judgment as a successor in interest to MPTO. A lower court's interpretation of the rules of civil procedure is a question of law we review for correctness. *Belnap v. Howard*, 2019 UT 9, ¶ 7, 437 P.3d 355. We reverse in part and remand. We conclude that the district court retained jurisdiction at the time it considered Jones's substitution motion and had the authority to use post-verdict proceedings to determine whether Mackey Price, LLC should be added as a successor in interest under rules 21 and 25 of the Utah Rules of Civil Procedure. But we reverse on the ground that the district court was required, after it rejected Mackey Price, LLC's jurisdictional challenges, to afford Mackey Price, LLC an opportunity to challenge the assertion that it was in fact a successor to MPTO.

### 1. Jurisdiction over Post-Verdict Proceedings

¶87 Mackey Price, LLC argues that the district court lost "subject matter jurisdiction" once it denied the JNOV motion on September 22, 2017.[18] On that date, Mackey Price, LLC claims that Jones's July 27 notice of appeal became effective and stripped the district court of jurisdiction over the case. And for that reason Mackey Price, LLC claims that the district court had no authority to add it to the judgment on November 16, 2017.

¶88 The district court ruled that it retained jurisdiction over the case because an amended judgment—which the district court had also ordered in its September 22 ruling—had yet to be entered. For that reason, the district court concluded that there was still no final judgment to effectively appeal.

¶89 We agree with the district court. Granted, the general rule is that "jurisdiction transfers from the district court to the appellate court" for most matters "[o]nce a notice of appeal is filed." *Garver v. Rosenberg*, 2014 UT 42, ¶ 10, 347 P.3d 380. But this general rule is

---

[18] Mackey Price, LLC acknowledges that the district court retained jurisdiction to rule on its rule 50(b) JNOV motion, filed July 27, 2017. *See* UTAH R. APP. P. 4(b)(1)(A) (listing a rule 50(b) motion as one that tolls the time for parties to appeal a judgment).

subject to important exceptions[19]—including the principle that "a premature notice of appeal does not effectuate a transfer of jurisdiction to review the merits of a case." *Id.* ¶ 15. And a notice of appeal is premature (and thus ineffective) if it is filed before the entry of final judgment. *See id.* ¶ 12 ("[J]urisdiction transfers from the district court to the appellate court only where: (1) the district court has . . . announced its decision, *and a subsequent final judgment is entered in conformity with the announcement*; and (2) the appealing party files a *timely* notice of appeal." (emphases added)).

¶90 In its September 22 ruling, the district court rejected MPTO's JNOV motion and explicitly directed Jones to prepare an amended judgment (at that time, to *remove* Mackey Price, LLC). At that point, Jones's July 27 notice of appeal was premature, and the district court retained jurisdiction. *See id.* ¶ 10 ("[A]n untimely notice may 'trigger stern consequences,' precluding the appellate court from exercising jurisdiction." (citation omitted)). When the district court granted Jones's motion to re-add Mackey Price, LLC to the judgment on November 16, there still had been no appealable "final judgment . . . entered in conformity with the announcement" the district court had made in its September 22 ruling. It was not until December 1 that the district court entered a final, amended judgment. So it was not until *that* date that Jones's July 27 notice of appeal became effective and deprived the district court of jurisdiction over most matters. *See* UTAH R. APP. P. 4(c) ("A notice of appeal filed after the announcement of a decision, judgment, or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof."). On that basis we conclude that the district court retained jurisdiction to decide Jones's rule 21/25 motion on November 16.

---

[19] Our cases also recognize another exception that could potentially apply here—district courts retain jurisdiction over some post-judgment proceedings, including "orders relating to enforcement of a judgment when a judgment is not stayed pending appeal." *Garver v. Rosenberg*, 2014 UT 42, ¶ 10 n.12, 347 P.3d 380. A proper motion for substitution of a successor entity could conceivably fall within a district court's jurisdiction over certain post-judgment proceedings. *See supra* ¶ 68 n.13. We need not decide the matter here, however, because we conclude that the notice of appeal did not become effective until after the challenged decision.

### 2. Substitution Under Rules 21 and 25

¶91 "In case of any transfer of interest," rule 25 provides that an "action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." UTAH R. CIV. P. 25(c). Under the terms of the rule, the party seeking to add a successor entity need only "serve the motion and any notice of hearing . . . upon persons not parties in the manner provided in Rule 4 for the service of a summons." *Id.* 25(a)(1), (c). So substitution is available under rule 25 after service of a motion, notice of a hearing, and appropriate proceedings on the question of whether the new party is an entity "to whom the [original party's] interest is transferred." *Id.* 25(c). Such a motion, moreover, may be filed after a jury verdict. *See id.* 21 ("Parties may be dropped or added by order of the court on motion of any party or of its own initiative *at any stage of the action* and on such terms as are just." (emphasis added)).[20] These rules thus provide authority for a court

---

[20] Rule 21 ostensibly deals with the "[m]isjoinder and [n]on-joinder of [p]arties," while rule 25 handles the more specific process of "[s]ubstitution." But the rules clearly overlap. *See* UTAH R. CIV. P. 25(c) (allowing a successor interest to be "substituted in the action *or* joined with the original party" (emphasis added)); *id.* 21 (allowing parties to be generally "dropped or added"). Importantly, moreover, rule 25(a)(1) places a ninety-day time limit only on the substitution of successors for deceased parties. And that implies that there is no similar time limit on substitutions of successors in interest. *See* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW 107 (2012) ("The expression of one thing implies the exclusion of others.").

Federal authorities applying a parallel federal rule agree. Because federal rule 25(c) is "wholly permissive," a leading federal treatise holds that "there is no time limit on moving to substitute under its provisions"—so long as the district court otherwise retains jurisdiction. *See* 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1958 (3d ed. 2018); *id.* (noting that the "most significant feature" of the nearly identical federal rule 25(c) is that it "does not require that anything be done after an interest has been transferred," because "[t]he action may be continued by or against the original party, and the judgment will be binding on the successor in interest even though the successor is not

(continued . . .)

to add a party to a judgment as a successor in interest to a party to the original proceedings—even after the jury has returned a verdict.

¶92 Where mere substitution of a successor entity is sought, there is no requirement that the plaintiff initiate a new proceeding by service of a summons and complaint. *Brigham Young University v. Tremco Consultants, Inc.*, 2007 UT 17, ¶ 39, 156 P.3d 782, is distinguishable. *Tremco*, as noted above, *see supra* ¶¶ 64–68, requires an entirely new proceeding where the plaintiff is asserting a new common-law or statutory claim—like alter ego or fraudulent transfer—that seeks to establish freestanding, independent liability for a new party. 2017 UT 17, ¶ 39 ("In light of the status conferred through the development of the common law and legislative action upon alter ego and fraudulent transfer, it is apparent that a claim founded on either theory is a civil action that must be prosecuted in the manner prescribed in the Utah Rules of Civil Procedure, commencing with the filing of a summons and complaint and not the abbreviated post-judgment collection procedures of rule 69."). The domain of rule 25 substitution is different. Here we are dealing not with a new cause of action with its own separate elements but the extension of liability on an entity properly joined to the suit as a successor to the existing defendant. As noted, rule 25 specifically allows for a more truncated process under the umbrella of the initial proceeding, requiring only that a party seeking to add an alleged successor "serve the motion and any notice of hearing" under rule 4. UTAH R. CIV. P. 25(a)(1), (c).

¶93 We reject Mackey Price, LLC's jurisdictional arguments on this basis.[21] Because Jones was seeking to add Mackey Price, LLC as

---

named"). The federal counterpart to our rule 25(c) has thus been deemed to allow for substitution not just post-verdict, but *post-judgment* (usually where necessary to facilitate enforcement of a judgment). *See, e.g.*, *Negrón-Almeda v. Santiago*, 579 F.3d 45, 52 (1st Cir. 2009); *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 70 (3d Cir. 1993); *Panther Pumps & Equip. Co., Inc. v. Hydrocraft, Inc.*, 566 F.2d 8, 23 (7th Cir. 1977); *TFG–Indiana, L.P. v. Hanco, Inc.*, No. 2:12–cv–00146 DN, 2014 WL 6473108, at *1 (D. Utah Nov. 18, 2014).

[21] We also reject Mackey Price, LLC's suggestion that adding a successor entity to a judgment under rules 21 and 25 runs afoul of "due process." Our opinion in *Brigham Young University v. Tremco Consultants, Inc.*, does suggest that the unnamed parties in that case were "denied their requisite measure of due process of law when the

(continued . . .)

a successor entity to MPTO, we hold that Jones was not required to initiate a new proceeding against Mackey Price, LLC by service of a summons and complaint. Jones was entitled to seek substitution of Mackey Price, LLC for MPTO under rules 21 and 25.

### 3. Default of Mackey Price, LLC

¶94 Our conclusion that rule 25 substitution is available in post-verdict proceedings does not exhaust all of Mackey Price, LLC's challenges to the proceedings below. Mackey Price, LLC also claims that it was entitled to be heard on the merits—on whether it was in

---

district court extended liability to them." 2007 UT 17, ¶ 27, 156 P.3d 782. But *Tremco* nowhere held that the substitution of a successor entity is a violation of the Due Process Clause of the Utah Constitution. Quite the contrary. Our holding in *Tremco* was rooted in the language and structure of our rules of civil procedure. *See id.* ¶ 29 (holding that a party "who pursue[s] civil actions in conformity with the rules of civil procedure" is presumptively entitled "to invoke the coercive power of the state to seize property or to command a party to conform its conduct to the court's decrees").

The problem in *Tremco* was the plaintiff's failure to pursue civil litigation in conformance with our rules. While we made general reference to the principle of "due process," we never established any freestanding constitutional right. Instead we held that "[o]ur rules of civil procedure lend operational expression" to the "abstract" promise of "due process" and are "'designed to provide a pattern of regularity of procedure which the parties and the courts [can] follow and rely upon.'" *Id.* (second alteration in original) (citation omitted).

We reiterate those principles here. Mackey Price, LLC's rights to due process are given "operational expression" in our rules of civil procedure. Those rights are adequately protected by the fair and proper application of rules 21 and 25. And Mackey Price, LLC has provided no basis for the establishment of a "due process" right that provides greater protections than those established in our civil rules. *See Neese v. Utah Bd. of Pardons & Parole*, 2017 UT 89, ¶ 100, 416 P.3d 663 (explaining that the content of "general, abstract" constitutional principles like the Due Process Clause must be based on how the founding generation would have understood those principles); *In re Discipline of Steffensen*, 2016 UT 18, ¶ 7, 373 P.3d 186 ("[T]he Due Process Clause is not a free-wheeling constitutional license for courts to assure fairness on a case-by-case basis.").

fact a successor entity to MPTO. On this point we agree, and reverse and remand.

¶95 Because Mackey Price, LLC was not a party to the original proceedings, the district court required Jones to serve the motion on the LLC pursuant to rule 4. Jones did so. That was all the notice to which Mackey Price, LLC was entitled. But the district court never required that Jones demonstrate that Mackey Price, LLC was in fact a successor in interest to MPTO. Instead, the district court considered a memorandum submitted by Mackey Price, LLC and defaulted the LLC on the ground that its memo challenged only "procedural issues" that the district court found unavailing:

> To the extent Mackey Price, LLC had disputed the factual allegations for joinder, the Court was prepared to schedule an evidentiary hearing to resolve the disputes. But Mackey Price, LLC does not dispute the factual allegations and, instead, focuses its opposition entirely on procedural issues. The Court has now resolved the procedural arguments against Mackey Price, LLC. And because Mackey Price, LLC raised no argument or opposition to the merits of the Motion, there remains nothing to litigate. Accordingly, the Court determines that Plaintiff is entitled to all relief requested in the Motion.

¶96 This was error. Mackey Price, LLC was entitled to appear specially and challenge the district court's jurisdiction and then argue the merits of the rule 25 motion if and when the district court rejected its procedural challenge. Mackey Price, LLC was not required to immediately address the merits of the rule 25 motion, as the district court suggested, or to affirmatively request an evidentiary hearing for disposition on the merits, as Jones suggests on appeal. As a threshold matter of procedure, Mackey Price, LLC had every right to make a special appearance and to challenge the court's jurisdiction. Once the district court rejected that challenge, it should have given Mackey Price, LLC an opportunity to be heard on the merits.[22]

---

[22] In fairness to the district court, this procedure is not clearly set forth in our rules or case law. We reverse nonetheless, however, because the prescribed procedure reflects the threshold nature of the

(continued . . .)

¶97 The procedure for challenging the attachment of a non-party as a successor in interest under rule 25 may thus find a parallel in that for filing a rule 12(b) motion. When a party contests a court's jurisdiction under rule 12(b), it is not required to affirmatively preserve the right to argue the merits of the underlying claim. It may simply make its 12(b) argument, receive an adverse ruling from the district court, and then contest the merits. This is the notion of a special appearance that is baked into rule 12. *See* UTAH R. CIV. P. 12(a)(1) ("If the court denies the [Rule 12] motion . . . the responsive pleading shall be served within 14 days *after* notice of the court's action." (emphasis added)); *see also id.* 12(d) ("The defenses specifically enumerated (1)-(7) in subdivision (b) of this rule, whether made in a pleading or by motion . . . shall be heard and determined *before* trial on application of any party, unless the court orders that the hearings and determination thereof be deferred until the trial." (emphasis added)). And we believe that such a process is appropriate in the context of a rule 25 substitution motion as well—a point that our advisory committee may wish to take up in a proposed amendment to this rule.

¶98 This principle should have governed here. Once the district court determined that it had jurisdiction over Mackey Price, LLC, it should have required Jones to show that Mackey Price, LLC was in fact a successor in interest to MPTO. The district court should not have taken Mackey Price, LLC's silence during a special appearance as a concession or endorsement of Jones's position. We reverse and remand for a resolution of Mackey Price, LLC's status on the merits—under procedures deemed appropriate by the district court on remand.

## IV. CONCLUSION

¶99 We reverse the dismissal of Jones's fraudulent transfer and punitive damages claims, the decision that a constructive trust was categorically unavailable, and the default determination that Mackey Price, LLC was a successor in interest to MPTO. But we affirm the district court in all other respects and remand for further proceedings consistent with this opinion.

———————

jurisdictional inquiry and parallels how our civil rules handle analogous procedural matters.